IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TIFFANY SHARPE, individually and
on behalf of all other similarly
situated individuals,                                                OPINION AND ORDER

                    Plaintiffs,                                       09-cv-329-bbc
     v.

APAC CUSTOMER SERVICES, INC.,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      This civil action was brought by plaintiff Tiffany Sharpe against defendant APAC Customer Services, Inc. for alleged violations of federal and state overtime compensation laws. Plaintiff brought this lawsuit as a class action on behalf of two separate classes: (1) a nationwide class for violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219, and (2) a Wisconsin class for violations of Wisconsin wage and hour laws. Plaintiff has moved for conditional certification of an opt-in nationwide collective action under § 216 of the FLSA on behalf of herself and similarly situated current and former employees of defendant and seeks authorization to notify potential class members of their right to join this case. Dkt. #29. Plaintiff further requests that defendant be ordered to produce a computer-readable data file containing the name, last known address, dates of employment,

telephone numbers and social security numbers for potential class members. Also before the court is defendant's motion to dismiss opt-in plaintiffs Jennifer Kasch, Gordon Betts and Matthew Schweiger. Dkt. #31. Jurisdiction is present. 28 U.S.C. §§ 1331 and 1332(d).

Because plaintiff has made a modest factual showing that defendant had a company-wide policy or practice that encouraged or permitted certain customer service representatives to work overtime without pay, plaintiff may proceed with the proposed collective action and provide notice to potential class members. The content and method of the notice and consent form will be the subject of a separate order. I will grant plaintiff's information disclosure request with the exception of the potential class members' social security numbers. Finally, I will deny defendant's motion to dismiss plaintiffs Kasch, Betts and Schweiger but will grant its request for reimbursement of the costs it incurred in arranging depositions for these plaintiffs.

Before I address the parties' arguments, I will summarize the relevant allegations contained in plaintiff's complaint and the affidavits, documents and deposition transcripts attached to the parties' briefs.

ALLEGATIONS OF FACT

A. The Parties

Defendant APAC Customer Services, Inc. specializes in providing customer interaction for retail, business service, communications, healthcare, insurance and financial service companies and the media, entertainment and travel industries. Defendant employs customer service representatives to take inbound calls from and make outbound calls to its clients' customers. Customer service representatives field telephone calls, assist with billing inquiries, handle service and equipment issues, update and educate customers regarding products and services and suggest and sell services to the customers of defendant's clients. In the past three years, defendant has operated nine call centers, including facilities in Tucson, Arizona; Tampa, Florida; Cedar Rapids, Iowa; Davenport, Iowa; Utica, New York; Corpus Christi, Texas; Green Bay, Wisconsin; La Crosse, Wisconsin; and Newport News, Virginia.

Plaintiff Tiffany Sharpe worked as a telephone customer service representative in defendant's La Crosse call center. Twelve former customer service representatives from the La Crosse call center have elected to join this lawsuit: Kathleen Woods, Melvin Woods, Jr., Jennifer Kasch, Gorsdon Betts, Mary Steenberg, Denise West, Kimberlee Kvistad, Jennie Blades, Dianna Proschinske, Pamela Olson, Bonnie Johnson and Matthew Schweiger. Also

3

joining the lawsuit is Robert Lutz, a former customer service representative who worked primarily at home but was supervised by the Green Bay call center.

B. Defendant's Employment Policies

Defendant employs the same operational and management structure at all of its call centers and has one general job description for all of its customer service representatives. Team leaders directly supervise customer service representatives. Defendant uses the same employee handbook and employee policy manual for its customer service representatives nationwide.

As of September 2009, defendant employed a little more than 5,000 customer service representatives in the United States. From May 26, 2006 to the present, customer service representatives have been classified as non-exempt employees, entitling them to overtime compensation for hours worked in excess of forty hours a week. Defendant's written policies instruct customer service representatives to record accurately all of their working time and prohibit them from performing work off-the-clock. Defendant's payroll policy provides that "All nonexempt employees are expected to accurately record their hours of work. Hours include all time spent on the job performing assigned duties or engaged to work in connection with those assigned duties." Defendant requires customer service representatives to sign an orientation checklist upon hiring that provides in relevant part:

4

**VIOLATIONS**

The following violations of Company policy will lead to disciplinary action up to and including written documentation in an associate's personnel file. Repeated violation will lead to termination. The following violations are only examples and do not cover every situation.

* * *

12. WORKING WHILE NOT ON THE CLOCK – Doing work while not clocked in on the time clock.

Defendant uses a Star bonus system in all of its call centers. Under this system, defendant pays bonuses if a customer service representative meets certain goals with respect to attendance, quality and performance. The more goals that an employee meets, the greater his or her bonus.

C. <u>Defendant's Electronic Tracking Systems</u>

1. <u>Timekeeping</u>

Defendant uses a number of computer programs to track the amount of time its employees spend working. A program called the APAC Timekeeping System (ATS) tracks the time that customer service representatives work in all of defendant's call centers in the United States, except for the center in Newport News, Virginia, which is not the subject of this lawsuit.

5

Customer service representatives launch ATS from Microsoft Windows on their individual computers. To do this, a customer service representative must first have his or her computer powered on and logged into Windows. Defendant's training manual for customer service representatives explains:

> The APAC Time System (ATS) was created to increase the accuracy and efficiency in tracking payroll hours. Each nonexempt employee is required to log into ATS Time Clock upon arrival for a work shift. Then the employee must log each significant change in activity, such as break, lunch and departure for the day. Manual entry is available as a back up for time entry to ensure that all hours are entered appropriately.

Customer service representatives remain on-the-clock until they log out of the ATS program. Defendant's employee handbook provides in relevant part:

> **Timekeeping**
>
> Nonexempt employees are required to verify their hours on a weekly time sheet report provided by their supervisor or manager. It is the employee's responsibility to correct any errors on the time sheet report before it is returned to payroll.
>
> * * *
>
> Altering, falsifying or tampering with time records, or recording time on another employee's time record, may result in corrective action, up to and including termination.

2. <u>Call management</u>

6

Defendant uses a separate electronic system called CenterView Management System (CMS) to bill its clients for time spent by customer service representatives on client-related customer telephone calls. CMS tracks the amount of time that customer service representatives spend logged into the telephone system fielding customer calls. CMS also tracks the amount of time that customer service representatives spend in various auxiliary (AUX) codes, such as "available time," "automatic call distribution time," and "after call work time." ATS and CMS are wholly independent, mutually exclusive systems, such that each system must be logged into and out of separately. Customer service representatives are not paid on the basis of the time they are logged into CMS, but on the basis of the time that is recorded and captured in ATS.

Depending on the client campaign to which they are assigned, customer service representatives may log into their telephone systems and CMS in one of two ways: (1) by entering their five-digit telephone log-in identification number on their telephone keypad; or (2) by launching and logging into a separate client-based computer program.

3. <u>Time variance between ATS, CMS and scheduled work hours</u>

To maintain accurate time reporting data for its clients, defendant tracks the difference between the amount of time that customer service representatives spend logged into ATS and the amount of time that they spend logged into CMS. This allows defendant

7

to identify, manage and resolve "lost" time (time that defendant cannot bill to its clients). Defendant seeks to keep the amount of time that customer service representatives spend logged in to ATS and CMS close to equal in order to maximize billable working time.

While working as customer service representatives in Wisconsin, plaintiff, Lutz, West, Kvistad, Kathleen Woods, Olson and Steenberg were all told in training or by their team leaders that they had to log into and out of ATS and CMS nearly simultaneously (within one to three minutes of each other).

Defendant tracks customer service representatives' adherence to their daily work schedules to maintain appropriate staffing and service levels. Defendant has a company-wide performance goals related to the amount of time a customer service representative spends taking calls from customers. (There is some dispute over how that goal is calculated. Plaintiff cites the deposition testimony of Catherine Hughes, who seems to suggest that defendant's goal is to have a customer service representative's ATS and CMS time entries vary by less than 0.5 percent, or 2.4 minutes in an eight-hour workday. However, in a later submitted affidavit, Mark McDermott, defendant's Chief Information Officer and Vice President, avers that the 0.5 percent performance goal relates to the variance between an employee's ATS entries and scheduled work hours.)

### E. Alleged Off-the-Clock Work

Defendant's stated policy is that customer service representatives must log into their telephone systems (CMS) at the beginning of their workday after logging into ATS and log out of CMS at the end of their workday, before logging out of ATS. However, customer service representatives must perform a number of tasks before answering calls, including: (1) booting up their computers; (2) logging onto defendant's network; (3) opening relevant computer programs; (4) reviewing company notices and training notes on SharePoint, defendant's intranet; (5) completing or correcting "customer credits" and other orders; and (6) completing other essential administrative tasks. The opt-in plaintiffs perform many of these tasks before their shifts begin, during their designated lunch breaks or after their shifts are completed.

A number of different trainers and supervisors either told plaintiff, Lutz, West, Kvistad, Kathleen Woods, Olson, Steenberg, Pronschinske and Marvin Woods directly or pressured them indirectly to arrive at work early and work "off the clock" to turn on their computers, log into a number of computer programs, read notices posted on defendant's company-wide intranet program and perform clerical tasks before logging into either ATS or CMS. Plaintiff, Lutz, West, Kvistad, Olson, Steenberg and Pronschinske worked during breaks or after logging off ATS and CMS in order to complete required tasks. Various team leaders either "coached" or threatened to reprimand plaintiff, Olson, Lutz and Kathleen Woods for logging into ATS too early before getting onto the phones at the start of their

9

shift. Kvistad and plaintiff were coached not to stay logged into ATS too long after logging out of the telephones.

DISCUSSION

A. Conditional Certification

Under the Fair Labor Standards Act, a district court may conditionally certify a class to give a representative plaintiff the opportunity to send out opt-in notices for violations of the Act. 28 U.S.C. § 216; Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989); Woods v. New York Life Insurance Company, 686 F.2d 578, 580 (7th Cir. 1982). This court has adopted a two-step process for class certification under the FLSA. Kelly v. Bluegreen Corp., 256 F.R.D. 626, 628-29 (W.D. Wis. 2009); Sjoblom v. Charter Communications, LLC, No. 07-cv-451-bbc, 2007 WL 4560541, *7-8 (W.D. Wis. Dec. 19. 2007); Austin v. Cuna Mutual Insurance Society, 232 F.R.D. 601, 605 (W.D. Wis. 2006). The first step requires the court to determine whether plaintiff has made "a modest factual showing" that she and potential class members were "victims of a common policy or plan that violated the law." Id.; Clarke v. Convergys Customer Management Group, Inc., 370 F. Supp. 2d 601, 604 (S.D. Tex. 2005); Flores v. Lifeway Foods, Inc., 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003); Kane v. Gage Merchandising Services, Inc., 138 F. Supp. 2d 212, 214 (D. Mass. 2001). This determination does not involve adjudication of the merits of the

10

claims. Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005) (citations and quotations omitted). Put another way, a plaintiff must demonstrate some factual nexus that connects her to other potential plaintiffs as victims of an unlawful practice. Clarke, 370 F. Supp. 2d at 605; Heagney v. European American Bank, 122 F.R.D. 125, 127 (E.D.N.Y. 1988). In determining whether a plaintiff has met her initial burden, courts rely on the complaint and any affidavits that have been submitted. Mooney v. Aramco Services Co., 54 F.3d 1207, 1213-14 (5th Cir. 1995); Bell v. Mynt Entertainment, LLC, 223 F.R.D. 680, 682 (S.D. Fla. 2004).

> Plaintiff seeks conditional certification of the following class of individuals:
>
> All persons who at any time within the past three years have worked for APAC Customer Services, Inc. as a customer service representative at its facilities in Tucson, Arizona; Tampa, Florida; Cedar Rapids, Iowa; Davenport, Iowa; Utica, New York; Corpus Christi, Texas; Green Bay, Wisconsin; or La Crosse, Wisconsin and were not paid for all hours worked in excess of 40 hours per week.

Plaintiff contends that she is similarly situated to potential class members because all customer service representatives in the identified call centers have the same job duties, work under the same operational and management structure and are subject to the same timekeeping, compensation and time management policies and practices that seek to maximize the amount of time billable to defendant's clients. Plaintiff asserts that defendant's national performance goal, time management practice and bonus program cause

11

trainers and supervisors to permit and even encourage call center employees to arrive at work before the start of their paid shift and work during their lunch breaks and after the end of their paid shift in order to log into and out of various computer applications and complete unfinished administrative tasks.

Defendant challenges plaintiff's motion for conditional certification on several grounds. First, defendant asserts that the purported class claim stated in plaintiff's complaint has no basis in fact because defendant does not base its pay for customer service representatives on the amount of time that they spend logged in to the telephone system, as alleged in the complaint. Although plaintiff did make this mistake, she based her allegation on statements that supervisors had made to her and to Kathleen Woods, Blades and Melvin Woods. Through the course of discovery, plaintiff learned that defendant bases its pay for its customer service representatives on the amount of time that they are logged into ATS.

However, this fact does not render plaintiff's claim meritless. As plaintiff indicates, the issue in this case is whether defendant permitted customer service representatives to perform administrative tasks while they were not logged into their time tracking program, whatever program that may be. A review of the complaint shows that defendant had sufficient notice that this was the substance of plaintiff's claim.

Defendant next contends that plaintiff has not identified an *illegal* overtime policy or practice that was applied regularly in its call centers, citing its strict policies prohibiting employees from working off the clock. Defendant argues that it is not illegal to manage or improve employee efficiency with performance goals, bonuses or time management practices. However, an employer may violate the FLSA even if it does not directly require employees to work overtime by permitting employees to perform uncompensated overtime work. Adair v. Wisconsin Bell, Inc., 2008 WL 4224360, at *7 (E.D. Wis. Sept. 11, 2008) (citing 29 U.S.C. § 203(g); 29 C.F.R. § 785.13; Levy v. Verizon Information Services Inc., 2007 WL 1747104, at *5 (E.D.N.Y. 2007)). Federal wage and hour regulations provide that

> In all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so.

29 C.F.R. § 785.13.

Testimony and affidavits submitted by the parties show that defendant's company-wide policy is that an employee's time entries in ATS should nearly equal the amount of time he or she is logged into the telephone system. Defendant also admits that it has a national performance goal of having only a 0.5 percent variance between employees' ATS entries and their scheduled work hours. According to the opt-in plaintiffs, it takes more than two or three minutes to log in to all of the necessary computer programs and complete

13

administrative tasks. As a result, the opt-in plaintiffs have been told or pressured to perform these tasks off-the-clock.

Defendant contends that even if the opt-in plaintiffs worked off-the-clock, they comprise only a small group of employees at one call center. Defendant argues that plaintiff has provided insufficient evidence that she was similarly situated to customer service representatives nationwide and, at most, has shown that a few supervisors at the La Crosse call center applied company policies illegally. It also points out that the opt-in plaintiffs' off-the-clock work incidents and alleged damages vary greatly.

Adducing evidence from a small percentage of the potential class does not preclude conditional certification of a class under the FLSA. A representative plaintiff is not required to come up with evidence of hundreds of particular overtime violations to make the requisite factual showing. Kelly, 256 F.R.D. at 629. Although almost all of the opt-in plaintiffs worked at one facility and were told different things about working overtime, their testimony indicates that the pressure to work overtime did not come from one or two rogue supervisors. I can draw a reasonable inference from the evidence adduced by plaintiff that it was widespread practice at the La Crosse and Green Bay call centers to instruct or pressure customer service representatives to work off the clock or risk discipline if they did not.

Further, plaintiff has demonstrated that all of defendant's customer service representatives have the same job duties, work under the same operational and management

14

structure and are subject to the same timekeeping, compensation and time management policies and practices that seek to maximize the amount of time billable to defendant's clients. Given defendant's nationwide production and efficiency goals, it is reasonable to infer that trainers and supervisors at other call centers similarly encourage customer service representatives to perform administrative tasks off the clock. "Where an apparent company-wide policy is behind the alleged FLSA violations, the plaintiff seeking certification for a company-wide class action should not be required to collect specific violations from each location or from each state before seeking authorization to provide notice to employees from all locations." Kelly, 256 F.R.D. at 631 (noting same where no difference among sales representatives' job description or applicability of defendant's apparent company-wide policy across nation). As noted by the United States District Court for the Eastern District of Wisconsin in another call center case, "there is a significant difference between the allegation that the Company was using a mechanical timekeeping system that, by its very nature, failed to capture its employees' entire time at work and the allegation by two, now three, employees that they thought it was doing so and therefore regularly arrived a few minutes early and stayed a few minutes late so that their pay would not be docked. The first reflects a company-wide policy that would merit a collective response. The second reflects what may be no more than a misunderstanding on the part of a few employees." Adair, 2008 WL 4224360, at *5.

At this stage, plaintiff need demonstrate only that there is some factual nexus that connects her to other potential plaintiffs as victims of an unlawful practice.  She has met this initial burden.  Defendant's further arguments regarding similar situation, individual issues and manageability of a nationwide class will become relevant at the second stage.  At the close of discovery, defendant may move to decertify the class, at which point the court will examine in detail the evidence and arguments submitted by the parties on the question of similar situation.   Austin, 232 F.R.D. at 605; Gambo v. Lucent Technologies, Inc., 2005 WL 3542485, at *4 (N.D. Ill. Dec. 22, 2005)); Flores, 289 F. Supp. 2d at 1045.  If the court finds that any of the opt-in plaintiffs are not similarly situated to the representative plaintiff, it may dismiss them without prejudice.  Also, the court may decertify the entire class if none of the class members are similarly situated.  Kane, 138 F. Supp. 2d at 214.

In sum, because plaintiff has met her initial burden, I will grant her motion for conditional certification of the class proposed in the complaint and allow her to notify potential members of the class.

### B.  Content and Method of Notice

Along with her brief in support of conditional certification, plaintiff submitted a proposed notice and consent form and asks that potential plaintiffs be allowed 90 days to file the approved consent forms and opt in to the lawsuit.  Although the proposed notice,

16

consent form and response period appear reasonable, defendant did not object or otherwise respond to them, presumably waiting for a ruling on the underlying motion for conditional certification. Accordingly, I will allow defendant an opportunity to file any objections it may have to the content and method of the proposed notice and consent form.

Plaintiff also asks that defendant be required to produce within 11 days the names, last known addresses, telephone numbers, dates of employment and social security numbers of all current and former customer service representatives who have worked in any of defendant's call centers other than the Newport News, Virginia facility, since October 9, 2006. I will grant plaintiff's disclosure request with the exception of the social security numbers. The basic contact information that plaintiff requests should be adequate to provide notice to most potential opt-in plaintiffs. The social security numbers of potential class members are extremely personal and unnecessary to circulate notice. Plaintiff may request more information at a later date if she encounters difficulties providing notice to potential class members.

### C. Motion to Dismiss Opt-In Plaintiffs

Defendant has moved for the dismissal of opt-in plaintiffs Kasch, Betts and Schweiger pursuant to Fed. R. Civ. P. 37(d) because those individuals failed to appear for their scheduled depositions without notice or justification. Defendant asserts that as a result of

these plaintiffs' failure to appear, it has incurred $963.23 in costs. Defendant is seeking $632.83 in reimbursement. Plaintiff argues that dismissal is too harsh a remedy and should be used only in extreme circumstances. I agree.

Rule 37(d) authorizes dismissal as a sanction for a party's failure to appear for a deposition after being served with proper notice. Collins v. Illinois, 554 F.3d 693, 696 (7th Cir. 2009). The standard cited by plaintiff, that an action may be dismissed only when there is a "clear record of delay or contumacious conduct, or prior failed sanctions," applies when a lawsuit is dismissed for want of prosecution or failure to comply with orders of the court. Id. (citing Maynard v. Nygren, 332 F.3d 462, 467 (7th Cir. 2003)). However, to dismiss a case as a sanction for a discovery abuse, the court must find only that the party's actions displayed willfulness, bad faith or fault. Id. Once the court makes such a finding, the sanction imposed must be proportionate to the circumstances. Id.

In this case, Kasch and Betts failed to appear for depositions on two different occasions. Although Kasch missed her first deposition because of "personal issues," she gave no reason for failing to appear at her rescheduled deposition. Plaintiff alleges that Kasch's rescheduled deposition was only tentative and Kasch was not available on that day. Betts missed his first deposition because his wife died and he missed his rescheduled deposition because he had to undergo back surgery. Defendant takes issue with the fact that Betts chose to have back surgery after agreeing to be deposed on that day. Schweiger provided no

18

notice or reason for not attending his deposition, and plaintiff's counsel admits that they have been unable to reach him since September 2009.

Although I understand defendant's frustration at having to reschedule the depositions of Kasch and Betts, both individuals had good reasons for failing to appear that were not entirely within their control. Because these parties do not appear to have acted wilfully or in bad faith, I will deny defendant's motion to dismiss their claims with prejudice. On the other hand, Schweiger's conduct displays wilfulness and bad faith. However, I see no reason to dismiss him at this stage in the lawsuit. If by the close of the notice period, Schweiger continues to fail to participate in this lawsuit, I will dismiss his claim with prejudice. I will award defendant $632.83 for the costs it incurred in repeatedly attempting to schedule the depositions of Kasch, Betts and Schweiger.

ORDER

IT IS ORDERED that

1. Plaintiff Tiffany Sharpe's motion for conditional certification, dkt. #29, is GRANTED. Plaintiff is authorized to send notice to the individuals that fall within the class. The content and method of the notice will be addressed in a separate order.

2. Defendant APAC Customer Services, Inc. may have until January 14, 2010 within which to submit any objections that it may have to the content and method of plaintiff's

proposed notice and consent form.  Plaintiff will have until January 19, 2010 within which to respond to defendant's objections.

3.  On or before January 19, 2010, defendant must provide plaintiff with a computer-readable data file containing the name, last known address, dates of employment and telephone numbers for all current and former customer service representatives who worked in any of defendant's call centers other than the Newport News, Virginia facility, since October 9, 2006.

4.  Defendant's motion to dismiss opt-in plaintiffs Jennifer Kasch, Gordon Betts and Matthew Schweiger, dkt. #31, is DENIED.  Defendant is awarded costs in the amount of $632.83.

Entered this 8th day of January, 2010.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge