## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| TIFFANY SHARPE, individually, and on behalf of all other similarly situated individuals who consent to become Plaintiffs | Court File No. 09-CV-329 |
| Plaintiffs, | **DEFENDANT'S OBJECTIONS TO PLAINTIFF'S PROPOSED NOTICE AND CONSENT FORM** |
| vs. | |
| APAC CUSTOMER SERVICES, INC., | |
| Defendant | |

Pursuant to the Court's Opinion and Order of January 11, 2010 [Doc. No. 66], APAC Customer Services, Inc. ("APAC") submits its objections to Plaintiff Tiffany Sharpe's ("Sharpe") proposed Notice of Collective Action Lawsuit ("Notice") [Doc. No. 30, Ex. 16] and Consent to Join ("Consent Form") [Doc. No. 30, Ex. 17].[1]  For the reasons explained below, APAC respectfully requests that the Court accept its proposed revisions to the Notice and Consent Form, limit the opt-in period to sixty (60) days, and restrict the use of the proposed Notice as discussed below.[2]

---

[1] Red-lined versions of APAC's proposed revisions to Plaintiff's Notice of Collective Action Lawsuit and Consent to Join are attached as Exhibits 1 and 2, respectively.

[2] Sharpe suggests that her proposed Notice is substantially similar to the notice this Court approved in *Kelly v. Bluegreen Corporation*, No. 3:08-cv-00401-bbc.  The Court-approved notice in *Kelly* is substantially different, however, in both form and substance.  *Kelly* See Doc. No. 30, at p. 15. *Compare* Doc. No. 30, Ex. 16 *with Kelly, et al. v. Bluegreen Corporation*, No. 3:08-cv-00401-bbc, at Doc. No. 38, Attachment 1.

<u>**DEFENDANT'S OBJECTIONS**</u>

**A.     The Notice Terms and Procedure Should be Carefully and Appropriately Limited.**

While the United States Supreme Court has authorized district courts to issue notice in appropriate cases under Section 216(b) of the FLSA, notice procedures "must be scrupulous to respect judicial neutrality ... and take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffman-LaRoche v. Sperling*, 493 U.S. 165, 174 (1989).  In this case, Sharpe's Notice suffers from four general defects.  Specifically, the Notice: (1) inaccurately describes the lawsuit, Sharpe's claims, and putative class members' eligibility to participate in the case; (2) is silent as to APAC's position in response to Sharpe's claims; (3) improperly implies that the Court has endorsed the lawsuit; and (4) is superfluous, and has the cumulative effect of coercing putative class members to join the case, rather than leaving that decision to putative class members' discretion.   APAC's proposed revisions – all of which are uncontroversial – remedy these defects, and should be adopted.

**B.     Proposed Changes to the Notice.**

**1.     The Notice inaccurately describes the lawsuit, Sharpe's claims, and putative class members' eligibility.**

This is not a lawsuit for any and all varieties of alleged overtime claims.  The lawsuit was brought by a single named plaintiff – Tiffany Sharpe – and not by numerous CSRs as Sharpe's Notice represents.  This Court has only found, for purposes of conditional collective-action certification, that Sharpe is "similarly situated" to other APAC CSRs who were allegedly denied overtime compensation for time spent performing work off-the-clock before and after their scheduled shifts and during unpaid meal breaks.  The Notice should be clarified with appropriate limiting language, as APAC proposes, clearly stating that only one named plaintiff (Sharpe) has

brought an FLSA claim against APAC, and succinctly explaining the nature of Sharpe's conditionally-certified FLSA claim.

With respect to putative class members' eligibility to join the lawsuit, the Notice should likewise include language limiting eligibility to those CSRs who may claim they were deprived of overtime compensation for time spent performing work off-the-clock before and after their scheduled shifts and during unpaid meal breaks.  Additionally, Notice should only be issued to those CSRs who were employed with APAC during the three-year period preceding the date that notice is physically mailed to putative class members, as the FLSA's three-year statute of limitations is tolled by individual class member's filing of consent forms – not by the Court's January 11, 2009, Opinion and Order.

### 2. The Notice should include APAC's position regarding Sharpe's claims.

Sharpe's Notice states that APAC "denies that it has improperly paid any current or former employees."  This proposed language is vague, and it does not describe with sufficient detail APAC's response to Sharpe's claims.  APAC requests that the Court accept the proposed additional language regarding its defenses to Sharpe's claims, which serves to clarify APAC's position in this lawsuit.

### 3. The Notice improperly suggests that the Court has endorsed the lawsuit.

By prominently stating – in italicized text directly below the Court caption – that this Court has authorized the issuance of notice, the Notice improperly suggests that the Court has, in fact, endorsed this lawsuit – which obviously is not the case.  This language should be stricken to clarify that, although the Court has authorized the issuance of notice to putative class members, it has not taken a position as to whether putative class members should join the lawsuit.  Similarly, numbered paragraph 12, entitled "How do I ask the Court to include me in this case," implies

that the Court encourages putative class members to join the case. To avoid the appearance of judicial endorsement, this language should be revised to instead state: "How do I ask to be included in the case?", which accomplishes the same purpose.

### 4. The Notice is repetitive and includes superfluous language.

The lawsuit is described on several occasions in varying terms, putative class members are repeatedly advised of the ramifications of choosing not to join the lawsuit, and putative class members are encouraged to contact Sharpe's counsel on every page of the Notice (the footer of each page contains Sharpe's counsel's contract information). The net effect of these repeated recitations is that putative class members could conceivably be coerced into joining the lawsuit or, at a minimum, contacting Sharpe's counsel and potentially forming client relationships. When coupled with the Notice's suggestion that the Court has endorsed the lawsuit, the threat of coercion is real. Indeed, conspicuously absent from Sharpe's proposed Notice is any indication that the choice to join the lawsuit is a personal one. The Notice should be revised to concisely and accurately describe the lawsuit once, clearly explain in simple terms putative class members' options and autonomy, and to neutrally suggest that putative class members have the option – but not are not obligated – to contact Sharpe's counsel. APAC's proposed revisions accomplish these objectives.

### C. The Opt-in Period Should be Limited to Sixty Days.

APAC further objects to the Notice to the extent Sharpe proposes that putative class members should be permitted ninety (90) to opt-in to the lawsuit by returning an executed consent form. There is simply no need in this case for a ninety-day opt-in period. On the contrary, considering the parties' agreed-upon case management plan [Doc. No. 25] – which establishes a April 2, 2010, deadline for APAC to move to decertify Sharpe's FLSA claim – Sharpe's proposed ninety-day opt-in period would have the practical effect of prejudicing APAC

by requiring APAC to move for decertification *before* the opt-in period closes and before it has a chance to conduct discovery as to all of the potential opt-in plaintiffs.

Courts routinely establish sixty-day opt-in periods in FLSA cases. *See, e.g.,* *Hintenberger v. Catholic Health Sys.*, 2009 U.S. Dist. LEXIS 97944, *38-40 (W.D.N.Y. Oct. 20, 2009) (establishing a sixty-day notice opt-in notice period); *Andrako v. U.S. Steel Corp.*, 2009 U.S. Dist. LEXIS 78778, *19-20 (W.D. Pa. Sept. 2, 2009) (concluding in a donning and doffing case that a sixty-day opt-in period "is reasonable."); *Labrie v. UPS Supply Chain Solutions, Inc.*, 2009 U.S. Dist. LEXIS 25210, *25-26 (N.D. Cal. Mar. 18, 2009) (concluding that a sixty-day opt-in period "is sufficient."); *Hallissey v. Am. Online, Inc.*, 2008 U.S. Dist. LEXIS 18387, *11-12 (S.D.N.Y. Feb. 19, 2008) (concluding that a sixty-day opt-in period "is proper considering the large number of [putative class members] who are to be notified, but is short enough to prevent undue delay or any prejudice to [defendant]."). A sixty-day opt-in period is reasonable in this case, would permit putative class members adequate time to join without unreasonably delaying a determination of the ultimate size and scope of this proposed collective action.

Even at sixty days, the opt-in period is unlikely to close before early April 2010. Based upon the current case management plan, this would still place the end of the opt-in period past the date on which APAC is obligated to move the Court to decertify the conditionally certified collective action. Now that the Court has determined to permit consent forms to be filed by individuals from call center locations around the country, APAC respectfully requests some period of time following the opt-in period, a minimum of sixty days, to conduct discovery.

### D.   Plaintiff's Use of the Notice and Personnel Data Should Be Restricted.

Now that the Court has ordered the production of contact information for potential opt-in plaintiffs in this litigation, APAC requests that the Court set parameters to clearly define the manner by which this information may be used. APAC requests that the Court enter an order

(1) restricting Plaintiff's use of the disclosed addresses for the sole purpose of sending notice of this litigation only; (2) restricting Plaintiff's communications with potential opt-ins to issuance of an approved notice by United States mail, on one occasion only; and (3) restricting Plaintiff's written communications with potential opt-in class members to the approved notice.  *See*, *e.g.*, *Hipp v. Liberty Nat'l Life Insur. Co.*, 164 F.R.D. 574, 576 (M.D. Fla. 1996) (authorizing use of employee addresses for purposes of issuing written notice on one occasion, and stating that "any other communication between the Plaintiffs or their counsel and these sought after parties is strictly prohibited by this court").

This type of limitation is appropriate because court-authorized notice is intended to accomplish *notice*; once the members of the prospective collective class are aware of the litigation, "reminders" or other forms of communication with prospective members of the collective action serve no legitimate purpose.  Here, Plaintiff's proposed notice, as revised by APAC, accomplishes the purpose authorized by *Sperling*:  the procedure will ensure that members of the prospective class receive formal court-authorized notice of these proceedings. Any further communication with potential opt-in class members beyond the issuance of written notice would, when combined with reference to such judicially-authorized communications, implicitly involve the Court in the encouragement of litigation, which *Sperling* certainly does not contemplate.  *See Sperling*, 493 U.S. at 181 (Scalia, J., dissenting) ("'Stirring up litigation' was once exclusively the occupation of disreputable lawyers, roundly condemned by this and all American courts.").  Accordingly, APAC requests that the Court order that the disclosed employee names and addresses may be used for purposes of notice only, and that the Court-approved notice may be issued on one occasion and will not be accompanied or followed by any

additional correspondence or communications, including cover letters, follow-up letters, telephone contacts, or other soliciting efforts.

The Court should also safeguard the use of employee telephone numbers, which have been ordered as part of APAC's production to Plaintiff. Although court-authorized notice of a lawsuit to potential class members may be appropriate in certain circumstances, the privacy interests of prospective class members are also entitled to respect, and these communications are also impacted by the Rules of Professional Conduct regarding attorney solicitations. *Wren v. RGIS Inventory Specialists*, 2007 U.S. Dist. LEXIS 95439, *11 (N.D. Cal., December 19, 2007) (ordering that contact information for prospective class members be produced to a third-party administrator to issue notice in order to protect class member privacy); *Torres v. CSK Auto, Inc.*, 2003 U.S. Dist. LEXIS 25092, *10 (W.D. Tex., December 17, 2003) (authorizing defendant to send letters to prospective class members, in order to "avoid the promulgation of confidential information outside the office and preclude concerns inherent in the direct solicitation of prospective clients by attorneys through mass mailings."). Indeed, the Rules of Professional Conduct generally <u>prohibit</u> attorneys from soliciting prospective clients by telephone, except in prescribed circumstances. *See*, *e.g.*, Wisconsin Rule Professional Conduct 7.3(a) (prohibiting live telephone solicitations by attorneys with prospective client).

Courts have declined to order the production of employee telephone numbers when the data serves no legitimate purpose. *See Torres*, 2003 U.S. Dist. LEXIS 25092 at *9-10 (denying plaintiffs' request for telephone numbers of potential opt-in plaintiffs); *Douglas v. GE Energy Reuter Stokes*, 2007 U.S. Dist. LEXIS 32449, *25 (N.D. Ohio, April 7, 2007); (authorizing contact information production of names and last-known addresses only); *Shabazz v. Asurion Insur. Serv.*, Civil No. 3:07-0653, 2008 U.S. Dist. LEXIS 29696, *16 (M.D. Tenn. Apr. 10,

2008) (ordering production of names and last-known addresses).  The Court should restrict the use of telephone numbers unless and until a potential opt-in has submitted the Consent to Plaintiff's counsel, or otherwise communicated with counsel regarding the litigation.

**E.     The Consent Form Should be Revised to Protect Potential Opt-in Plaintiffs' Rights.**

Finally, APAC objects to the inclusion of the second sentence of the Consent Form, which states: "If this case does not proceed collectively, I also consent to join any subsequent action against APAC Customer Services, Inc. for unpaid wages and overtime.  The practical effect of this language is that potential opt-in plaintiffs are agreeing to join an action that has not yet even been filed or considered.  Instead, if this action does not ultimately proceed collectively, any affected individuals can then make their own decision about how to proceed; instead of being asked to make such a decision on a premature and speculative basis.

Date: January 14, 2010

*s/ Jacqueline E. Kalk*

Andrew J. Voss (MN Bar No. 0241556)
avoss@littler.com
Jacqueline E. Kalk (MN Bar No. 0388459)
jkalk@littler.com
Jeffrey A. Timmerman (MN Bar No. 0352561)
jtimmerman@littler.com
**LITTLER MENDELSON, P.C.**
1300 IDS Center
80 South 8th Street
Minneapolis, MN  55402.2136
Telephone: 612.630.1000
Facsimile:  612.630.9626

Jennifer L. Ciralsky (WI Bar No. 1068092)
jciralsky@littler.com
**LITTLER MENDELSON, P.C.**
250 East Wisconsin Avenue
18th Floor
Milwaukee, WI 53202
Telephone: (414) 291-5536
Facsimile: (414) 291-5526

**ATTORNEYS FOR DEFENDANT**

Firmwide:93642759.1 024979.1304

9