**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

---

TIFFANY SHARPE, individually, and on behalf of all other similarly situated individuals who consent to become Plaintiffs,

Plaintiffs,

v. Case No. 09 CV 329

APAC CUSTOMER SERVICES, INC.,

Defendant.

---

**PLAINTIFFS' MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF FLSA COLLECTIVE ACTION RESOLUTION**

Plaintiffs, by and through their counsel, move this Court for an Order granting approval of the collective action resolution reached in this case with Defendant APAC Customer Services, Inc. ("Defendant" or "APAC"). As part of this Motion, Plaintiffs request that the Court: (1) approve the terms of the collective action Stipulation for Resolution and Release of Claims ("Stipulation") executed between Tiffany Sharpe ("the Named Plaintiff") and Defendant, attached hereto as Exhibit A, and (2) authorize the dissemination of notice of this resolution to class members in the form attached as Exhibit 1 to the Stipulation. In support of this Motion, Plaintiffs incorporate their Memorandum in Support.

WHEREFORE, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Approval of FLSA Collective Action Resolution.

## INTRODUCTION

This case has been conditionally certified as a collective action under the Fair Labor Standards Act for claims of alleged unpaid overtime wages pursuant to 29 U.S.C. § 216(b). The Named Plaintiff, individually and on behalf of all others similarly situated, on the one hand, and Defendant, on the other hand, have agreed to resolve this lawsuit. The terms of the settlement are memorialized in the Stipulation attached hereto as Exhibit A. Plaintiffs respectfully ask that the Court find the settlement to be a fair and reasonable resolution of contested litigation over a *bona fide* dispute, and approve the terms of the Stipulation.

## BACKGROUND AND TERMS OF THE STIPULATION

The Named Plaintiff, on behalf of herself and other Customer Service Representatives ("CSRs"), filed this collective and class action against Defendant in the United States District Court for the Western District of Wisconsin on May 26, 2009. Plaintiffs alleged, among other things,[1] violations of the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C § 216(b), particularly that Defendant failed to provide Plaintiffs overtime compensation for time spent performing integral and indispensable tasks pre-and post-shift. Complaint, Doc. 1. Defendant denied, and continues to deny, Plaintiffs' allegations, and argued that CSRs did not perform and were not required to perform any uncompensated work. Answer, Doc. 14. Moreover, Defendant argued, among other things, that if such work was performed, it was *de minimis* and therefore not compensable under the law. *Id.*

This resolution follows a significant investment of time and expense by the parties conducting discovery and preparing for trial. The parties have exchanged thousands of pages of documents, answered scores of interrogatories, and deposed many of the Current Opt-In Plaintiffs (defined below) as well APAC's corporate representatives. Declaration of George A.

[1] Plaintiffs' Complaint also asserts Rule 23 claims for unpaid straight-time wages under Wisconsin state law.

Hanson, ¶ 2 (hereinafter Hanson Decl., ¶ _), attached hereto as Exhibit B. On October 9, 2009, Plaintiffs filed their Motion for Collective Action Certification and on January 11, 2010, the Court granted Plaintiffs' Motion. *Id.* at ¶ 3. At this time, prior to issuing notice of the certified collective action, 23 individuals in addition to the Named Plaintiff have consented to join this litigation (the "Current Opt-In Plaintiffs"). *Id.* at ¶ 4.

Following certification, the parties agreed to stay the case and mediate. The parties selected John Phillips of Husch Blackwell Sanders LLP as their mediator. Mr. Phillips is a nationally-renowned mediator well-versed in complex wage and hour cases. In advance of mediation, the parties exchanged additional information necessary to fully and fairly evaluate the claims of existing and putative class members, including information related to the size of the class, weeks worked by class members, the prevalence of overtime weeks, and class compensation data. The parties participated in a two-day mediation on March 9-10, 2010. Although the parties did not reach an agreement at the close of the mediation, negotiations continued over the next several weeks, and the parties eventually reached a settlement. *Id.* at ¶ 5.

At all times during the process, the parties engaged in arm's-length negotiations directed towards resolution of the claims asserted by the Named Plaintiff, Current Opt-in Plaintiffs, and Potential Opt-In Plaintiffs.[2] To that end, the Stipulation provides the Named Plaintiff, Current Opt-in Plaintiffs, and Potential Opt-In Plaintiffs the opportunity to participate in a resolution of the wage and hour claims asserted in this action. The critical terms of the Stipulation are summarized below.

---

[2] Potential Opt-In Plaintiffs means telephone-dedicated CSRs who were employed by APAC from March 11, 2008 to March 10, 2010, in each of APAC's U.S. facilities other than the facility in Newport News, Virginia.

**The Fund.**

Defendant will create a claims fund in the total amount of $4,000,000.00 ("Total Claims Fund"). Stipulation, § I.A. The Total Claims Fund will be allocated as follows: (1) $2,666,000.00 ("Net Claims Fund") will be paid to the Named Plaintiff, Current Opt-In Plaintiffs, and Qualified Claimants (as that term is defined in the Stipulation) – on a *pro rata* basis – based on their answers to three questions on the Claims Administration Form attached as Exhibit 2 to the Stipulation; (2) $5,000.00 will be paid to the named Plaintiff Tiffany Sharpe as a service award; (3) $1,000.00 will be paid to each of the nine Current Opt-In Plaintiffs who participated in a deposition; and (4) $1,320,000 (which represents 33% of the Total Claims Fund) will be paid to Plaintiffs' Counsel for attorneys' fees and costs, including the cost of settlement administration. *Id.* at §§ I.A.1-.5.

**Terms of Administering of the Settlement.**

Within thirty (30) days of the Court granting final approval of the Stipulation, the Claims Administrator will mail a Notice and Claims Administration Form, attached respectively as Exhibits 1 and 2 to the Stipulation, to the Potential Opt-In Plaintiffs. *Id* at § V.B.1. Each Notice shall identify the maximum and minimum amounts the recipient is eligible to receive upon timely return of a properly completed and signed Claims Administration Form. *Id* at § V.B.2. At the same time, Plaintiffs' Counsel will mail a Claims Administration Form to the Named Plaintiff and Current Opt-In Plaintiffs. In order to participate, the Named Plaintiff, Current Opt-In Plaintiffs, and Potential Opt-In Plaintiffs must submit a properly completed and signed Claims Administration Form to the Claims Administrator postmarked on or before sixty (60) calendar days after the date the Notice and Claims Administration Form was initially mailed. *Id* at §§ V.B.1-.4.

Under the terms of the Stipulation, the Named Plaintiff agrees to release all federal and state wage and hour claims and will execute a general mutual release of claims. *Id* at § VI. In consideration for this general mutual release, the Named Plaintiff will receive a service award of $5,000.00 in addition to her *pro rata* share of the Net Claims Fund. Current Opt-In Plaintiffs and Qualified Claimants release only claims for violations of the FLSA that arose prior to and including March 10, 2010. *Id* at § VII.

**Distribution of the Fund.**

The Net Claims Fund will be distributed to the Named Plaintiff, Current Opt-In Plaintiffs, and Qualified Claimants based on an equitable formula that is roughly proportional to the potential value of their respective claims. *Id.* at § I.A.1. Specifically, after deductions for fees, costs, and service awards, the Named Plaintiff, Current Opt-In Plaintiffs, and Qualified Claimants will each receive the greater of $30.00, or a *pro rata* share of the Net Claims Fund based on: (1) the number of weeks he or she worked as a CSR between March 11, 2007 and March 10, 2010, divided by the total number of weeks worked by the Named Plaintiff, Current Opt-In Plaintiffs, and Potential Opt-In Plaintiffs between March 11, 2007 and March 10, 2010; (2) multiplied by $2,660,000.00. *Id.* Thereafter, each Class Member's *pro rata* share of the Net Claims Fund will be adjusted based on his or her answer to question 3 on the Claims Administration Form:

> 3. If you answered yes to Question 2: On a typical work day at APAC, how much time do you estimate you spent performing work-related tasks for which you were not paid (including time spent at the beginning of the day, end of the day, and over a meal break)?
>
> ☐ Less than 5 minutes ☐ 5 – 10 minutes ☐ More than 10 minutes

Each Named Plaintiff, Current Opt-In Plaintiff, and Qualified Claimant's *pro rata* share of the Net Claims Fund will be reduced by 50% if he or she answers "Less than 5 minutes" to question

3 of the Claims Administration Form, or reduced by 25% if he or she answers "5 to 10 minutes" to question 3 of the Claims Administration Form. *Id*. Each Named Plaintiff, Current Opt-In Plaintiff, and Qualified Claimant who answers "More than 10 minutes" to question 3 of the Claims Administration Form will receive his or her full *pro rata* share of the Net Claims Fund. *Id*. All portions of the Net Claims Fund that are not claimed by the Named Plaintiff, Current Opt-In Plaintiffs, or Potential Opt-In Plaintiffs shall revert to Defendant. *Id*. at § I.A.6.

Subject to Court approval, Defendant has also agreed to pay $1,320,000.00 (which represents 33% of the Total Claims Fund) to settle claims for attorney fees, costs, and expenses (including the costs of claims administration). *Id* at § I.A.3. Defendant has also agreed to pay service awards in the amounts of $5,000.00 to the Named Plaintiff and $1,000.00 each to the nine Current Opt-In Plaintiffs who participated in written discovery and sat for depositions. *Id* at ¶¶ I.A.4-.5.

## ARGUMENT

### I. The Proposed Compromise Is a Fair and Reasonable Resolution of the Parties' Claims and Defenses

Court approval of the Stipulation is necessary to effectuate a valid and enforceable release of the FLSA claims asserted by the Named Plaintiff, Current Opt-In Plaintiffs, and Potential Opt-In Plaintiffs. *See Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986). FLSA collective actions do not implicate the same due process concerns as Rule 23 class actions because FLSA plaintiffs are required to affirmatively opt-in in order to participate. *McElmurry v. U.S. Bank Nat. Ass'n*, 495 F.3d 1136, 1139 (9th Cir. 2007). Accordingly, the high standard for approval of a class action settlement under Rule 23 does not apply to an FLSA settlement. In a private action between the employer and employee, a settlement is enforceable only if the parties agree on the terms and the court approves the settlement as "a fair and

reasonable resolution of a bona fide dispute over FLSA provisions". *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353, 1355 (11th Cir. 1982).

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve a *bona fide* dispute. *Lynn's Food Stores,* 679 F.2d at 1353 n.8. The ultimate question is whether the settlement is fair. *Id.* at 1353. "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Id.* "If the proposed settlement reflects a reasonable compromise over contested issues," the court should approve the settlement. *Id.*; *see also Manning v. N.Y. Univ.*, No. 98 Civ. 3300, 2001 WL 963982, at *11-12 (S.D.N.Y. Aug. 22, 2001); *Sampaio v. Boulder Rock Creek Developers, Inc.*, No. 07-CV-153, 2007 WL 5209390, at *1 (E.D.N.Y. Sept. 6, 2007) (same). Other courts in this and surrounding jurisdictions routinely approve settlements reached in FLSA actions similar to the settlement presented here. *See, e.g.*, *Kelly v. Bluegreen Corp.*, Order Granting Final Approval of FLSA Settlement and Dismissing Case, No. 08-cv-401 (W.D. Wis. Oct. 30, 2009) (Crabb, J.), attached hereto as Exhibit C; *Kukla v. Saint-Gobain Perf. Plastics Corp.*, Order Granting Final Approval of the Settlement Agreement and Judgment, No. 3:09-cv-00259 (W.D. Wis. Sept. 18, 2009) (Crabb, J.), attached hereto as Exhibit D; *Kasten v. Saint-Gobain Perf. Plastics Corp.*, Order Granting Final Approval of the Settlement Agreement and Judgment, No. 07-C-0449 (W.D. Wis. Feb. 4, 2009) (Crabb, J.), attached hereto as Exhibit E; *Perry v. Nat'l City Bank*, Order Approving Settlement, Attorneys' Fees and Service Awards, No. 05-cv-891-DRH (S.D. Ill. March 3, 2008) (Herndon, C.J.), attached hereto as Exhibit F.

In approving a settlement offer, the Court must give comprehensive consideration to all relevant factors and yet the settlement hearing must not be turned into a trial or a rehearsal of the trial. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974) (overruled on other

grounds).[3] The primary consideration in determining whether a settlement is fair and reasonable is the strength and nature of the claim in light of the possible defenses. *Id.* at 455. Other factors include: the complexity, expense and likely duration of the litigation; the stage of the proceedings and the amount of discovery completed; the risks of establishing liability; the risks of establishing damages; the ability of the defendants to withstand greater judgment; and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Id.* at 463; *Brask v. Heartland Automotive Servs., Inc.*, 2006 WL 2524212, at *2 (D. Minn. Aug. 15, 2006).

### A. This Settlement Was the Product of a *Bona Fide* Dispute

Plaintiffs alleged that Defendant violated the overtime provisions of the FLSA by failing to provide CSRs overtime compensation for time spent performing integral and indispensable tasks pre-and post-shift. Plaintiffs argued that these acts constituted violations of the FLSA.

Defendant denied, and continues to deny, Plaintiffs' allegations. Among other things, Defendant argued that its timekeeping system accounted for and compensated for all pre- and post-shift time CSRs spent working. Defendant further contended that little – if any – overtime work was required of the CSRs and that such time, if it occurred, was *de minimis.* In addition, Defendant argued that the number of weeks during the applicable limitations period in which CSRs actually worked more than 40 hours was minimal, thereby severely restricting the amount of overtime that could be reasonably claimed even if Plaintiffs' allegations on the merits were credited.

Were Plaintiffs to ultimately prevail, then Defendant would be faced with the prospect of a significant monetary verdict in favor of Plaintiffs, as well as the obligation to pay litigation fees

[3] The *Grinnell* case concerns class action settlements under Fed. R. Civ. P. 23, which, while useful in analyzing an FLSA settlement, imposes an higher standard for approval than that required here.

and costs. Were Defendant to ultimately prevail, then Plaintiffs faced a potential dismissal of their claims and no recovery of any kind. Accordingly, the Court should readily conclude that a *bona fide* dispute between the parties existed.

**B. The Proposed Resolution is Fair and Reasonable**

The resolution memorialized in the Stipulation was the product of arm's-length negotiations by experienced counsel, which had the effect of providing relief to the putative class, and eliminating the inherent risks both sides would bear if this complex litigation were to continue through resolution on the merits. The parties participated in an intensive two-day mediation with a qualified mediator. That mediation process, along with weeks of additional negotiations, ultimately allowed the parties to obtain the present resolution. Under these circumstances, a presumption of fairness should attach to the proposed resolution. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as an indication of fairness); *see also In re BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and awards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery."); *Dail v. George A. Arab Inc.*, 391 F. Supp. 2d 1142, 1146 (M.D. Fla. 2005) ("When considering these factors, the Court should keep in mind the strong presumption in favor of finding a settlement fair.") The fairness of this resolution is intertwined with the contested nature of this litigation, as a strong presumption of fairness attaches to a proposed FLSA settlement presented in an adversarial context. This resolution is subject to a strong presumption of fairness as it is both endorsed by Plaintiffs'

Counsel and is the result of arm's length negotiations — demonstrated by the spirited and intensive two-day mediation, the continued negotiations, and the substantial discovery that predated the settlement.

Consideration of several additional relevant factors confirms that the proposed resolution is fair and reasonable. The complexity, expense, and likely duration of the litigation weighs heavily in favor of finding that the resolution is fair and reasonable. This action involved thousands of CSRs employed in at least eight call centers scattered across the country. Discovery regarding the merits of Plaintiffs' claims and Defendant's defenses, though already extensive, had only begun and, if litigation were to continue, would likely have involved many depositions throughout the United States as well as additional written discovery and the retention of experts both for Plaintiffs and Defendant. If litigation were to continue, Defendant would certainly move for decertification, which, if granted, could result in zero recovery for a significant portion of the certified Rule 216(b) class, and the parties would have likely both filed summary judgment briefing. This would likely be followed by an extended and complex trial with an uncertain outcome. In short, while a number of issues remain unresolved in this litigation, the discovery conducted thus far has enabled counsel for the parties to assess the respective strengths and weaknesses of their case and reach the conclusion that resolution under the terms set forth in the Stipulation is in the parties' best interest.

Indeed, Plaintiffs' Counsel has gained a comprehensive knowledge of the facts and legal issues relating to the respective claims and defenses and has ample evidence on which to base an informed assessment of the proposed settlement. Based on their knowledge of the case and the applicable law, as well as records and information produced by Defendant, Plaintiffs' Counsel believes the resolution is fair, reasonable, and adequate. "Although the Court is not bound by the

counsel's opinion, their opinion is nonetheless entitled to great weight." *In re BankAmerica*, 210 F.R.D. at 702. Indeed, the Stipulation was the product of good-faith negotiations between the parties at mediation, and the Named Plaintiff's, Current Opt-In Plaintiffs', and Potential Opt-In Plaintiffs potential recovery varies based on their employment duration and payroll records, as well as their response to the third question on the Claims Administration Form.

In reaching a resolution, both parties recognized the inherent risks of going forward, the complexities of maintaining, trying and defending a collective action, and the lengthy appellate process that would inevitably occur following any jury verdict or dispositive summary judgment determination. *See In re BankAmerica*, 210 F.R.D. at 701 ("As courts have recognized, when considering settlement agreements they should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush.") (internal quotations omitted).

Despite these risks, this resolution recovers a significant monetary amount for the Named Plaintiff, Current Opt-In Plaintiffs, and Potential Opt-In Plaintiffs. After deductions for fees, costs and service awards, it will provide a payment that is equivalent to make-whole relief for an average of nearly 10 minutes per day of off-the-clock work for each week in which overtime was worked by the Named Plaintiff, Current Opt-In Plaintiffs, and Potential Opt-In Plaintiffs. Considering the evidence gathered during discovery and the risk of litigation, this level of net relief is highly reasonable.

Additionally, it should also be noted that the release required from the Current Opt-In Plaintiff and Qualified Claimants to participate in the settlement is limited – not general – in

nature. This means that the amounts allocated to each Current Opt-In Plaintiff and Qualified Claimant constitute consideration solely for the release of their FLSA claims. Hanson Decl., ¶ 6. The limited nature of this release exemplifies the results achieved on a class-wide basis. *See Ramah Navajo Chapter v. Babbitt*, 50 F. Supp. 2d 1091, 1103-04 (D.N.M. 1999) (noting the limited, rather than general, nature of the release as further evidence of an exceptional result in favor of class members).

Accordingly, the Court should approve this compromise as a fair and reasonable resolution of contested claims, arising out of a *bona fide* dispute over FLSA liability and coverage.

## II. The Service Awards Requested for Plaintiffs who Materially Participated Are Reasonable

The Named Plaintiff along with several Current Opt-In Plaintiffs materially participated in bringing this resolution to fruition. The Seventh Circuit recognizes that service awards are appropriate in such circumstances and looks to the following relevant factors: actions plaintiff took to protect class's interests, degree to which class has benefitted from those actions, and amount of time and effort plaintiff expended in pursuing litigation. *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

Most importantly among those plaintiffs who brought value to the class is the Named Plaintiff, who was the original plaintiff. Service awards act as an incentive to "induce an individual to participate in the suit." *Id.* at 1016. Plaintiffs' Counsel seeks $5,000.00 for the Named Plaintiff for bringing the suit, creating this benefit to the class, and for the significant time and effort expended during this case. Additionally, the Named Plaintiff spent many hours giving valuable information that formed the basis of the complaint and the case strategy, spent significant time preparing for and being deposed, answered individual discovery, searched for

and produced relevant documents, and personally signed the Stipulation. The $5,000.00 service award requested by Plaintiffs' Counsel is well within the range of reasonableness and even lower than what many named plaintiffs receive. *See, e.g., Rausch v. Hartford Financial Services Group*, No. 01-CV-1529-BR, 2007 WL 671334, at *3 (D. Or. Feb. 26 2007) (finding "$10,000 as a reasonable incentive award"); *Berger v. Xerox Corp. Retirement Income Guarantee Plan*, 2004 WL 287902, *3 (S.D. Ill. 2004) (awarding $20,000 per named plaintiff); *Razilov v. Nationwide Mut. Ins. Co.*, No. 01-CV-1466, 2006 WL 3312024, at *4 (D. Or. Nov. 13, 2006) (finding $10,000 reasonable); *Retsky Family Ltd. Partnership v. Price Waterhouse LLP*, 2001 WL 1568856, *4 (N.D. Ill. 2001) (approving incentive award of $7,500); *Gaskill v. Gordon*, 1995 WL 746091, *4 (N.D. Ill. 1995) (awarding named plaintiffs $6,000 each in incentive awards).

In addition to the Named Plaintiff, nine Current Opt-In Plaintiffs agreed to act as testifying representative witnesses. Each of them answered individual discovery, searched for relevant documents, and spent significant time preparing for and being deposed. This resolution would not be possible without their efforts. Plaintiffs' Counsel seeks a modest service award of $1,000.00 for each of them, which is well-earned and well within the range approved by other courts. *See Equal Rights Center v. Washington Metropolitan Area Transit Authority*, 573 F. Supp. 2d 205, 214 (D.D.C. 2008) ("$1,000 [awards] granted to . . . deposed class members are not uncommon in class action litigation."). In light of their considerable effort and risk undertaken to obtain the result reflected in the Stipulation, the Court should approve the payments of $1,000.00 service awards to each of the nine Current Opt-In Plaintiffs who sat for depositions and responded to written discovery.

## III. The Agreement on Fees, Costs, and Expenses Is Fair and Reasonable

Plaintiffs' Counsel has vigorously represented Plaintiffs, achieving this resolution only after significant expenditures of time and money. Accordingly, Plaintiffs' Counsel seeks fees and costs agreed upon under the terms of the Stipulation and consistent with the governing law.

In the Seventh Circuit, the favored approach to awarding reasonable attorneys' fees is the percentage-of-the-fund method. *See Matter of Continental Illinois Securities Litig.*, 962 F.2d 566, 572-74 (7th Cir. 1992) ("*Continental*"). To determine what percentage of the fund should be awarded, the district court looks to the market price for legal services, which has traditionally ranged from 33-1/3% to 40% in comparable commercial litigation. *See Teamsters Local Union No. 604 v. Inter-Rail Transport, Inc.*, 2004 WL 768658, *1 (S.D. Ill. 2004). Likewise, this Court as well as others within the Seventh Circuit have found an award of 33% of the fund is appropriate. *See Kelly v. Bluegreen Corp.*, Order Granting Final Approval of the Settlement Agreement and Judgment, No. 08-cv-401 (W.D. Wis. Oct. 30, 2009) (Crabb, J.) (approving award of 33% of settlement fund as outlined in the settlement agreement between the parties); *Perry v. Nat'l City Bank,* Order Approving Settlement, Attorneys' Fees and Service Awards, No. 05-cv-891 (S.D. Ill. March 3, 2008) (Herndon, J.) (same). Consequently, the parties' agreement that Plaintiffs' Counsel receive an award of $1,320,000.00 for fees and expenses (which represents 33% of the Total Claims Fund) should be approved.

### A. The Percentage-of-the-Fund Method is the Preferred Approach to Awarding Attorneys' Fees in Common Fund Cases.

The Seventh Circuit's preferred approach to awarding attorneys' fees in common fund cases is the percentage-of-the-fund method. *See Continental*, 962 F.2d at 572-74. Under the common fund doctrine, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as

a whole." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478, (1980). The common fund doctrine "is based on the equitable notion that those who have benefited from litigation should share in its costs." *Sutton v. Bernard*, 504 F.3d 688, 691-92 (7th Cir. 2007).

The Seventh Circuit has authorized district courts to employ the percentage-of-the-fund method to determine an appropriate fee award in common fund cases. *See Florin v. Nationsbank of Georgia*, *N.A.*, 34 F.3d 560, 566 (7th Cir. 1994). In fact, "[t]he approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred upon the class." *See Continental I*, 962 F.2d at 572-74; s*ee also Teamsters,* 2004 WL 768658, at *1; *Meyenburg*, 2006 WL 2191422.

In deciding fee levels in common fund cases, the Seventh Circuit has "consistently directed district courts to 'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" *Sutton*, 504 F.3d at 692 (citing *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) (collecting cases and reversing district court's award for failure to apply "market-based approach" to approving attorney's fees.)).

Under the market-based approach, "class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client." *Retsky Family Ltd.*, 2001 WL 1568856, at *4. Plaintiffs' Counsel executed fee arrangements with the Named Plaintiff and Current Opt-In Plaintiffs that entitles Plaintiffs' Counsel to 35% of any recovery. Hanson Decl., ¶ 7. This percentage is consistent with the standard contingent fee percentage in this legal marketplace for comparable commercial litigation. *See Meyenberg*, 2006 WL 2191422, at *2; *Teamsters*, 2004 WL 768658, at *1 ("it is uncontested that the market rate for this type of litigation is at least thirty-three and one-third

percent (33 1/3%)"). Moreover, an award of 33% of a fund (Plaintiffs' Counsel having forgone the 35% fee contracted for at the outset of the litigation) is consistent with the practice of this district as well as other district courts within this Circuit's market-based approach. *See Kelly*, No. 08-cv-401 (approving fee award of 33% as outlined in the parties' settlement agreement); *Teamsters*, 2004 WL 768658 at *1 ("In this Circuit, a fee award of thirty-three and one-third (33 1/3%) in a class action is not uncommon."); *Perry*, No. 05-cv-891 (approving fee award of 33%). Simply put, "[t]he utilization of the market percentage method . . . results in awards of attorneys' fees 'equal to approximately one-third or more of the recovery.'" *Teamsters*, 2004 WL 768658, at *1.

**B. The Attorneys' Fee Request is a Reflection of the Relevant Market.**

***1. The results and the benefit conferred upon the certified Rule 216(b) class justifies the requested award.***

In light of the legal and factual complexities of this case, not the least of which involves proving overtime worked in the absence of time records, there is no doubt that this is a favorable result for Plaintiffs. The proposed settlement brings substantial value to the certified Rule 216(b) class. On average, according to Plaintiffs' Counsel's estimate, after deduction of the requested attorneys' fees and costs, the net settlement will provide a payment that is equivalent to make-whole relief for an average of nearly 10 minutes per day of off-the-clock work for each week in which overtime was worked by the Named Plaintiff, Current Opt-In Plaintiffs, and Potential Opt-In Plaintiffs. Hanson Decl., ¶ 8. The fact that these substantial amounts are available without the uncertainty of trial, and are being delivered through this expeditious resolution rather than after years of additional litigation, qualifies the results of this compromise as favorable under any reasonable assessment.

***2. Plaintiffs' Counsel is experienced in complex wage and hour litigation such as this.***

Plaintiffs' Counsel has substantial experience in prosecuting large-scale wage and hour class and collective actions such as this, and routinely negotiates contingency fee compensation rates at or near 35%. Hanson Decl., ¶ 9.; *see also* Stueve Siegel Hanson LLP Firm Resume, attached to Hanson Declaration as Exhibit 1; Lear Werts LLP Firm Resume, attached to Hanson Declaration as Exhibit 2. George Hanson has been the lead or co-lead counsel on over 70 wage and hour cases, and has developed substantial experience and expertise in the area of wage and hour law. Mr. Hanson is also a frequent speaker regarding wage and hour matters nationwide. Hanson Decl., ¶ 10. In light of Plaintiffs' Counsel's expertise, skill, and typical contingent fee arrangement, the requested award is reasonable.

***3. When entering into the contingency fee agreement, the outcome of this case was unknown.***

Plaintiffs' Counsel has secured a favorable result for Plaintiffs and avoided the risks of trial. The primary legal issue in this case revolved around whether APAC suffered or permitted its CSRs to work pre- and post-shift, performing integral and indispensable tasks without pay. Because the answer invariably involves a determination of what constitutes work and when the compensable workday begins, issues that are continuing to evolve, this case presented substantial room for debate between the parties.

In conclusion, based upon the negotiated fee agreement in this case, as compared to other comparable cases Plaintiffs' Counsel has litigated, the normal rate of compensation in similar cases, the risk Plaintiffs' Counsel undertook in engaging in this litigation, the uncertainty of recovery, and the favorable results obtained, Plaintiffs' Counsel is entitled to a reasonable attorneys' fee award of $1,320,000.00 which represents (33%) of the Total Claims Fund.

**CONCLUSION**

As the proposed resolution was reached as the result of contested litigation and resolves a *bona fide* dispute between the parties over FLSA coverage, the resolution should be approved and the Plaintiffs' motion granted.

Dated: June 7, 2010

Respectfully submitted,

/s/ George A. Hanson

George A. Hanson (*pro hac vice*)
Ashlea G. Schwarz (*pro hac vice*)
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: 816-714-7100
Facsimile: 816-714-7101
Email: hanson@stuevesiegel.com
Email: ashlea@stuevesiegel.com

Bradford B. Lear (*pro hac vice*)
Todd C. Werts (*pro hac vice*)
**LEAR WERTS LLP**
2003 W. Broadway, Suite 107
Columbia, Missouri 65203
Telephone: 573-875-1991
Facsimile: 573-875-1985
Email: lear@learwerts.com
Email: werts@learwerts.com

Peggy A. Lautenschlager Wisc. # 1002188
Daniel P. Bach Wisc. # 1005751
**BAUER & BACH LLC**
123 East Main Street, Suite 300
Madison, Wisconsin 53703
Phone: (608) 260-0292
Fax: (608) 260-0002
Toll Free: (877) 260-0047
E-mail: lautenschlager@bauer-bach.com
Email: bach@bauer-bach.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all attorneys of record.

/s/ George A. Hanson
Attorney for Plaintiffs