# EXHIBIT A

## STIPULATION FOR RESOLUTION
## AND RELEASE OF CLAIMS

The parties to this Stipulation for Resolution and Release of Claims ("Stipulation") are Defendant APAC Customer Services, Inc., on the one hand, and the Named Plaintiff, Tiffany Sharpe, for herself and on behalf of the Current Opt-In Plaintiffs and the Potential Opt-In Plaintiffs on the other hand, in the case of *Sharpe, et al. v. APAC Customer Services, Inc.*, Case No. 09 CV 329, currently pending in the United States District Court for the Western District of Wisconsin (the "Lawsuit").

### RECITALS

WHEREAS, on May 26, 2009, the Named Plaintiff filed the Lawsuit in the United States District Court for the Western District of Wisconsin alleging, among other things, that Defendant violated Section 16(b) of the Fair Labor Standards Act ("FLSA").

WHEREAS, on June 17, 2009, Defendant filed its Answer denying the material allegations of the Named Plaintiff's Complaint.

WHEREAS, the parties engaged in discovery during the prosecution of the litigation, including the exchange of Rule 26 disclosures and service of formal document requests and interrogatories. Depositions were also conducted of Defendant's corporate representatives and of the Named Plaintiff and nine of the Current Opt-In Plaintiffs.

WHEREAS, twenty-four (24) individuals, including the Named Plaintiff, have consented to join the Lawsuit as of the date of execution of this Stipulation.

WHEREAS, Plaintiffs' Counsel agreed to represent the Named Plaintiff and Current Opt-In Plaintiffs on a contingency basis and executed individual retainer agreements with each, which entitles Plaintiffs' Counsel to receive thirty-five percent (35%) of any settlement or judgment awarded.

WHEREAS, on October 9, 2009, the Named Plaintiff filed a Motion for Collective Action Certification and, on January 11, 2010, the Court granted the Named Plaintiff's Motion for Collective Action Certification.

WHEREAS, on January 29, 2010, the parties agreed to stay the Lawsuit to explore resolution through mediation.

WHEREAS, as a condition of mediation, the parties agreed to exchange additional information and data necessary to fully and fairly evaluate the claims of existing and putative class members, including information related to the size of the putative class, weeks worked by putative class members, and putative class compensation data.

WHEREAS, on March 9-10, 2010, the parties engaged in a two-day mediation with an experienced mediator, and after continued and protracted negotiation that continued into the weeks following the mediation, the parties reached a resolution.

WHEREAS, Defendant denies all of the allegations in the Lawsuit and any and all liability and damages of any kind to anyone with respect to the alleged facts or causes of action asserted in the Lawsuit, and denies that this case should be litigated on either a collective action or a class action basis, but nonetheless, without admitting or conceding any damages whatsoever or the propriety of collective action or class action status, has agreed to resolve the Lawsuit on the terms and conditions set forth in this Stipulation to avoid the burden, expense, and uncertainty of continuing the Lawsuit.

WHEREAS, the parties recognize that the outcome in the Lawsuit is uncertain and that achieving a final result through the litigation process would require substantial additional risk, discovery, time, and expense.

WHEREAS, the Named Plaintiff and her counsel have conducted an investigation and evaluation of the facts and law relating to the claims asserted in the Lawsuit and believe, in view of the costs, risks, and delay of continued litigation balanced against the benefits of resolution, that the resolution as provided in this Stipulation is in the best interests of the Named Plaintiff, Current Opt-In Plaintiffs, and Potential Opt-In Plaintiffs and represents a fair, reasonable, and adequate resolution of the Lawsuit.

WHEREAS, the parties have agreed to resolve the Lawsuit as to the Named Plaintiff, the Current Opt-In Plaintiffs, and the Potential Opt-In Plaintiffs who choose to participate in a claims administration process agreed upon by the parties as set forth in this Stipulation.

WHEREAS, the parties agree to undertake their best efforts, including all steps and efforts that may become necessary by order of the Court, to effectuate the terms and purposes of this Stipulation.

NOW THEREFORE, the parties, intending to be legally bound and in consideration of the mutual covenants and other good and valuable consideration set forth below, do hereby agree as follows:

## DEFINITIONS

A.    **Current Opt-In Plaintiffs:** "Current Opt-In Plaintiffs" means the twenty-three (23) plaintiffs in addition to the Named Plaintiff who opted-in to this Lawsuit prior to the execution of this Stipulation.

B.    **Customer Service Representatives or CSRs:**    "Customer Service Representatives" or "CSRs" mean employees who worked as customer service representatives in any APAC location throughout the United States with the exception of the facility located in Newport News, Virginia.

3

**C.**     **Defendant or APAC:** "Defendant" or "APAC" mean APAC Customer Services, Inc., and any of its parent organizations, predecessors, successors, divisions, partners, subsidiaries, owners, assigns, shareholders, insurers, and affiliates, and any of its/their current or former officers, directors, employees, trustees, agents, owners, shareholders, assigns, insurers, and attorneys.

**D.**     **Defendant's Counsel:** "Defendant's Counsel" means Littler Mendelson, P.C.

**E.**     **Named Plaintiff:** "Named Plaintiff" means Tiffany Sharpe.

**F.**     **Potential Opt-In Plaintiffs:** "Potential Opt-In Plaintiffs" means CSRs other than the Named Plaintiff and Current Opt-In Plaintiffs who were employed by APAC between March 11, 2008, and March 10, 2010, in each of its U.S. facilities other than the facility located in Newport News, Virginia.

**G.**     **Qualified Claimants:** "Qualified Claimants" means Potential Opt-In Plaintiffs who properly complete and timely return a signed Claims Administration Form as set forth below that contains "yes" answers to the first two questions on the Claims Administration Form.

**H.**     **Plaintiffs' Counsel:** "Plaintiffs' Counsel" means Stueve Siegel Hanson LLP and Lear Werts LLP.

**I.**     **Notice:** "Notice" means the Notice attached hereto as Exhibit 1 to the Stipulation.

**J.**     **Claims Administration Form:** "Claims Administration Form" means the Claims Administration Form attached hereto as Exhibit 2 to the Stipulation.

**K.**     **Claims Administrator:** "Claims Administrator" means the claims administrator selected by Plaintiffs' Counsel, subject to the approval of Defendant.

**L.** **Claims Period:** "Claims Period" means a sixty (60) calendar day period commencing on the date the Claims Administrator first issues the Notice and Claims Administration Form to Potential Opt-In Plaintiffs.

<u>AGREEMENT</u>

### I.    CLAIMS FUND ALLOCATION

**A.**    Defendant shall create a claims fund in the total amount of $4,000,000.00 (the "Total Claims Fund"), which will be allocated as follows:

1.    $2,666,000.00 (the "Net Claims Fund") of the Total Claims Fund will be allocated to resolve the claims of the Named Plaintiff, Current Opt-In Plaintiffs, and Potential Opt-In Plaintiffs. The Named Plaintiff, Current Opt-In Plaintiffs, and Qualified Claimants shall each receive the greater of $30.00, or a *pro rata* share of the Net Claims Fund, which shall be calculated based on the number of weeks he or she worked as a CSR between March 11, 2007, and March 10, 2010; divided by the total number of weeks worked by the Named Plaintiff, Current Opt-In Plaintiffs, and Potential Opt-In Plaintiffs between March 11, 2007, and March 10, 2010; multiplied by $2,666,000.00 (*i.e.*, the Net Claims Fund). Thereafter, each Named Plaintiff, Current Opt-In Plaintiff, and Qualified Claimant's *pro rata* share of the Net Claims Fund will be reduced by fifty-percent (50%) if he or she answers "Less than 5 minutes" to question 3 of the Claims Administration Form, or reduced by twenty-five-percent (25%) if he or she answers "5 to 10 minutes" to question 3 of the Claims Administration Form. Named Plaintiff, Current Opt-In Plaintiffs, and Qualified Claimants who answer "more than 10 minutes" to question 3 of the Claims Administration Form will receive their full *pro rata* share of the Net Claims Fund. In the event a Current Opt-In Plaintiff fails to timely return a valid Claims Administration Form, he or she will be deemed to have returned a valid Claims Administration Form, answered "yes" to

questions 1 and 2 of the Claims Administration Form, and answered "5 to 10 minutes" to question 3 of the Claims Administration Form.

2.      The claims of any Current Opt-In Plaintiffs who did not work for Defendant as a CSR between a March 11, 2008, and March 10, 2010, will nevertheless be included in the allocation formula as described in Section I.A.1, and any payments to such Current Opt-In Plaintiffs will be made from the Net Claims Fund.

3.      $1,320,000.00 of the Total Claims Fund (which represents 33% of the Total Claims Fund) will be allocated to Plaintiffs' Counsel for attorneys' fees and costs (including all costs associated with the claims administration process).

4.      $5,000.00 of the Total Claims Fund will be allocated to the Named Plaintiff (who will execute a separate general release of all claims) as a service award.

5.      $9,000.00 of the Total Claims Fund will be allocated to the nine Current Opt-In Plaintiffs who participated in a deposition as service awards.

6.      All portions of the Net Claims Fund that are not claimed by the Named Plaintiff, Current Opt-In Plaintiffs, and/or Potential Opt-In Plaintiffs shall revert to Defendant.

B.      In the event the Named Plaintiff and/or Plaintiffs' Counsel is required to make a fee and/or service award application consistent with the amounts outlined above, Defendant agrees not to object to such application.

## II.      CONSENT TO ISSUANCE OF NOTICE

A.      For purposes of resolving the Lawsuit only, the parties agree that the Named Plaintiff, Current Opt-In Plaintiffs, and Potential Opt-In Plaintiffs are similarly situated for purposes of 29 U.S.C. § 216(b) and consent to Court-facilitation of the Notice and Claims Administration Form to the Potential Opt-In Plaintiffs.

6

**B.**     This Stipulation is contingent upon approval by the Court and is entered into voluntarily by the parties for the purpose of resolving the Lawsuit only.  APAC does not waive, and instead expressly reserves, its right to challenge the propriety of whether the Named Plaintiff is similarly situated to the Current Opt-In Plaintiffs and Potential Opt-In Plaintiffs should the Court not approve this Stipulation.

**C.**     The parties shall cooperate and present to the Court for its consideration in connection with the approval of this Stipulation and Court-facilitation of the Notice and Claims Administration Form competent evidence as may be requested by the Court.

### III.     APPROVAL PROCEDURE

This Stipulation will become final and effective upon occurrence of all of the following events: (1) execution of this Stipulation by the Named Plaintiff and Defendant; (2) submission of this Stipulation to the Court for approval; (3) entry of an order by the Court approving this Stipulation; and (4) Court approval of the Notice and Claims Administration Form in their current or substantially similar forms.

### IV.     EFFECT OF NONAPPROVAL

In the event that any of the conditions specified in Section III of this Stipulation are not satisfied, or in the event that this Stipulation does not obtain approval of the Court for any reason, this Stipulation and all matters covered by it, including, but not limited to, the stipulation that Current Opt-In Plaintiffs and Potential Opt-In Plaintiffs are similarly situated to the Named Plaintiff under 29 U.S.C. § 216(b), and the releases contained herein, shall be null and void.  In such event, nothing in this Stipulation shall be used or construed by or against any party as a determination, admission, or concession of any issue of law or fact in the Lawsuit, and the parties do not waive, and instead expressly reserve, their respective rights with respect to the prosecution and defense of the Lawsuit as if this Stipulation never existed.  Notwithstanding the

7

foregoing, in the event the Court does not approve a term of this Stipulation, the parties will confer in good faith about appropriate revisions to this Stipulation, and the parties may submit a revised Stipulation to the Court for approval in the event they agree upon appropriate revisions.

## V.   MODE AND TIMING OF PAYMENT OF CLAIMS

### A.   Claims Administration

1.   All costs and expenses of the claims administration, including all costs and expenses incurred by the Claims Administrator, will be paid by Plaintiffs' Counsel from the amount designated above for attorneys' fees and expenses.

2.   Within ten (10) business days of the Court's order granting approval of this Stipulation, Defendant shall provide the Claims Administrator a database containing the following information: (a) the name, last known address, and last known telephone number of the Named Plaintiff, Current Opt-In Plaintiffs, and Potential Opt-In Plaintiffs; (b) the start dates and end of employment dates for the Named Plaintiff, Current Opt-In Plaintiffs, and Potential Opt-In Plaintiffs; (c) the number of weeks that the Named Plaintiff, Current Opt-In Plaintiffs, and Potential Opt-In Plaintiffs worked as CSRs between March 11, 2007, and March 10, 2010; and (d) all additional information reasonably necessary to perform calculations and allocations as provided in this Stipulation.

3.   Within ten (10) business days of the Court's order granting approval of this Stipulation, Defendant shall provide Plaintiffs' Counsel with the following information: (a) the name, last known address, and last known telephone number of the Named Plaintiff, Current Opt-In Plaintiffs, and Potential Opt-In Plaintiffs; (b) the start dates and end of employment dates for the Named Plaintiff, Current Opt-In Plaintiffs, and Potential Opt-In Plaintiffs; and (c) the number of weeks that the Named Plaintiff, Current Opt-In Plaintiffs, and Potential Opt-In Plaintiffs worked as CSRs between March 11, 2007, and March 10, 2010.  In the event any

8

Potential Opt-In Plaintiff contacts Plaintiffs' Counsel, Defendant's counsel will provide any additional information reasonably necessary to permit Plaintiffs' Counsel to adequately respond to such inquiry.

      4.    Within twenty-five (25) days of the Court's order granting approval of this Stipulation, the Claims Administrator will provide Defendant's Counsel and Plaintiffs' Counsel with a spreadsheet containing the names of, and the maximum *pro rata* amounts payable to, the Named Plaintiff, Current Opt-In Plaintiffs, and Potential Opt-In Plaintiffs.

**B.**    **Notice and Claims Procedure**

      1.    Within thirty (30) days of the Court's order granting approval of this Stipulation, or such later date as may be mutually agreed upon by Plaintiffs' Counsel and Defendant's Counsel, the Claims Administrator shall issue the Notice and Claims Administration Form on one occasion unless the conditions in Section V.B.3. and/or Section V.B.4. are met by first-class mail to the last known addresses of the Potential Opt-In Plaintiffs. Additionally, within this same timeframe, Plaintiffs' Counsel will provide a Claims Administration Form to each of the Named Plaintiff and Current Opt-In Plaintiffs, with instruction to return the completed Claims Administration Form to the Claims Administrator via first-class mail postmarked on or before the date the Claims Period ends.

      2.    Each Notice that the Claims Administrator issues will identify the minimum and maximum amounts the recipient is eligible to receive upon timely return of a properly completed and signed Claims Administration Form. Potential Opt-In Plaintiffs will be informed that in order to be eligible to receive a portion of the Net Claims Fund, they must properly complete and return a signed Claims Administration Form to the Claims Administrator postmarked on or before the date the Claims Period ends.

3.      In the event a Notice and/or Claims Administration Form is returned as undeliverable, the Claims Administrator shall promptly notify Defendant's Counsel, who shall provide the Claims Administrator with the last four digits of the Social Security number of the individual whose Notice and/or Claims Administration Form was returned as undeliverable within ten (10) business days of receipt of such notice. The Claims Administrator shall thereafter attempt to locate the individual whose Notice and/or Claim Administration Form was returned as undeliverable via a computer and/or other search using the additional information provided by Defendant's Counsel, and remail the Notice and/or Claims Administration Form to the updated address, with instruction to return the completed Claims Administration Form to the Claims Administrator postmarked on or before the date the Claims Period ends. In no event shall the Claims Period be extended or tolled for Potential Opt-In Plaintiffs whose Notice and/or Claims Administration Form is returned as undeliverable. However, Defendant, in its sole discretion, retains the right to accept late Claims Administration Forms.

4.      In the event the Claims Administrator receives a defective or incomplete Claims Administration Form, the Claims Administrator shall provide the sender with an explanation of the deficiency, and afford the sender an opportunity to return a valid Claims Administration Form to the Claims Administrator postmarked on or before the date the Claims Period ends. In no event shall the Claims Period be extended or tolled for Potential Opt-In Plaintiffs who submit a defective or incomplete Claims Administration Form to the Claims Administrator. However, Defendant, in its sole discretion, retains the right to accept late Claims Administration Forms.

5.      Within fifteen (15) days after the date the Claims Period ends, the Claims Administrator shall provide Plaintiffs' Counsel and Defendant's Counsel copies of all Claims

10

Administration Forms received by the Claims Administrator, and a list containing: (a) the names of the individuals who returned properly completed and signed Claims Administration Forms during the Claims Period; (b) the gross amount the Named Plaintiff, each Current Opt-In Plaintiff, and each Qualified Claimant is eligible to receive pursuant to the terms of this Stipulation, and a computation describing how each such amount was calculated; (c) the federal and state tax amounts (including income withholding and FICA) to be withheld from the checks the Claims Administrator issues to each of these individuals for allegedly unpaid wages; and (d) the net amount each of these individuals is eligible to receive pursuant to the terms of this Stipulation. The Claims Administrator's calculations regarding the gross amount each of these individuals is eligible to receive pursuant to the terms of this Stipulation, the federal and state tax amounts (including income withholding and FICA) to be withheld from the checks the Claims Administrator issues to each of these individuals for allegedly unpaid wages, and the net amount each of these individuals is eligible to receive pursuant to the terms of this Stipulation shall be subject to review by, and the approval of, Defendant and the Named Plaintiff. Defendant shall be responsible for remitting payment of the applicable federal and state tax amounts (including income withholding and FICA) withheld from the checks the Claims Administrator issues to the Named Plaintiff, Current Opt-In Plaintiffs, and Qualified Claimants for payment of allegedly unpaid wages, as described in Section V.C.6., and Defendant shall also remit payment to the Social Security Administration of its matching share of FICA taxes associated with checks issued by the Claims Administrator to the Named Plaintiff, Current Opt-In Plaintiffs, and Qualified Claimants for payment of allegedly unpaid wages. Defendant shall be responsible for paying its share of its tax obligations associated with the checks issued by the Claims

11

Administrator to the Named Plaintiff, Current Opt-In Plaintiffs, and Qualified Claimants for payment of allegedly unpaid wages separate from the Total Claims Fund.

      6.     Within twenty (20) days after the date the Claims Period ends, Plaintiffs' Counsel shall file with the Court copies of the second page of each properly completed and signed Claims Administration Form that was returned to the Claims Administrator during the Claims Period.

      7.     Within thirty (30) days after the date the Claims Period ends, Plaintiffs' Counsel shall file a joint stipulation of dismissal of the Lawsuit with prejudice.

**C.**     **Payment Procedure**

      1.     Within twenty-five (25) days after the date the Claims Period ends, Defendant shall tender the following amounts to the Claims Administrator:

      a.     The portion of the Net Claims Fund which will be distributed by the Claims Administrator to resolve the claims of the Named Plaintiff, Current Opt-In Plaintiffs, and Qualified Claimants in the manner described in Section I.A.1. of this Stipulation. It is the intent of the parties that Defendant shall only tender to the Claims Administrator the portion of the Net Claims Fund equal to the sum of the net amounts each of the Named Plaintiff, Current Opt-In Plaintiffs, and Qualified Claimants is eligible to receive pursuant to the terms of this Stipulation. Defendant shall not tender to the Claims Administrator the portion of the Net Claims Fund that Defendant will use to remit payment of applicable federal and state tax amounts (including income withholding and FICA) withheld from the checks the Claims Administrator issues to the Named Plaintiff, Current Opt-In Plaintiffs, and Qualified Claimants for payment of allegedly unpaid wages, as described in Section V.C.6;

12

        b.      $1,320,000.00 of the Total Claims Fund, which will be distributed by the Claims Administrator to Plaintiffs' Counsel for attorneys' fees and costs (including all costs associated with the claims administration process);

        c.      $5,000.00 of the Total Claims Fund, which will be distributed by the Claims Administrator to the Named Plaintiff as a service award; and

        d.      $9,000.00 of the Total Claims Fund, which will be distributed by the Claims Administrator to the nine Current Opt-In Plaintiffs who participated in a deposition as service awards.

        2.      Upon tendering the amounts described in Section V.C.1. to the Claims Administrator, Defendant shall be deemed to have fully satisfied its obligations under the terms of this Stipulation, and Defendant shall not be liable for any acts or omissions of the Claims Administrator in distributing the amounts tendered to it by Defendant. The Named Plaintiff, Current Opt-In Plaintiffs, and Qualified Claimants hereby and forever release, acquit, discharge, and covenant not to sue Defendant, including as defined above in the "Definitions" section, any of its parent organizations, predecessors, successors, divisions, partners, subsidiaries, owners, assigns, shareholders, insurers, and affiliates, and any of its/their current or former officers, directors, employees, trustees, agents, owners, shareholders, assigns, insurers, and attorneys, for and from any and all claims, whether known or unknown, relating to or arising out of any acts or omissions of the Claims Administrator in distributing the amounts tendered to it by Defendant.

        3.      Within five (5) days after entry of an order dismissing the Lawsuit with prejudice, the Claims Administrator shall deliver to Plaintiffs' Counsel a check made payable to the Named Plaintiff in the amount of $5,000.00, for full payment of the Named Plaintiff's service award. This payment shall not be subject to payroll withholdings, and shall be reported by the Claims Administrator on an IRS Form 1099.

4.      Within five (5) days after entry of an order dismissing the Lawsuit with prejudice, the Claims Administrator shall deliver to Plaintiffs' Counsel nine separate checks made payable to the Current Opt-In Plaintiffs who participated in a deposition in the amount of $1,000.00 each, for full payment of their service awards. These payments shall not be subject to payroll withholdings, and shall be reported by the Claims Administrator on IRS Form 1099s.

5.      Within five (5) days after entry of order dismissing the Lawsuit with prejudice, the Claims Administrator shall make payment via wire transfer to Stueve Siegel Hanson LLP in the amount of $1,320,000.00, for full payment for Plaintiffs' Counsel's attorneys' fees and costs (including all costs associated with the claims administration process) in connection with the Lawsuit.

6.      Within five (5) days after entry of an order dismissing the Lawsuit with prejudice, the Claims Administrator shall issue two checks of equal amounts via first-class mail to the Named Plaintiff, each of the Current Opt-In Plaintiffs, and each of the Qualified Claimants, in an aggregate amount equal to their respective net share of the Net Claims Fund. The first of these checks shall be deemed payment of allegedly unpaid wages, shall be subject to appropriate payroll withholdings by Defendant, and shall be reported by the Claims Administrator on IRS Form W-2s. Defendant shall remit payment to the appropriate tax authorities of the federal and state tax amounts (including income withholding and FICA) withheld from these first checks, and Defendant shall also remit payment to the Social Security Administration of its matching share of FICA taxes associated with these first checks. The second of these checks shall be deemed compensation for alleged liquidated damages pursuant to the FLSA, shall not be subject to payroll withholdings by Defendant, and shall be reported by the Claims Administrator on IRS Form 1099s. It is the intent of the parties that APAC not incur any

14

additional taxes whatsoever on account of payments reported on IRS Form 1099s. In the event a check is returned as undeliverable, the Claims Administrator shall promptly notify Defendant's Counsel, who shall provide the Claims Administrator with the last four digits of the Social Security number of the individual whose check was returned as undeliverable within five (5) days of receipt of such notice. The Claims Administrator shall thereafter attempt to locate the individual whose check was returned as undeliverable via a computer and/or other search using the additional information provided by Defendant's Counsel and remail such check. Any check that remains undeliverable or is not cashed after three hundred and sixty-five (365) days following its issuance shall be cancelled and voided, and the aggregate amount of any such cancelled and voided check minus any expenses, administrative costs, and tax obligations of the Total Claims Fund, shall be distributed, *cy pres*, to a charity chosen by Defendant, with Plaintiffs' Counsel' approval, which will not be unreasonably withheld.

      7.    In the event the Lawsuit is not dismissed with prejudice for whatever reason, all amounts tendered by Defendant to the Claims Administrator, as described in Section V.C.1., shall revert to Defendant and shall be returned to Defendant by the Claims Administrator upon Defendant's request.

## VI.    RELEASE BY NAMED PLAINTIFF

In exchange for the considerations recited in this Stipulation, the Named Plaintiff will execute a separate general mutual release of all claims.

## VII.    RELEASE BY CURRENT OPT-IN PLAINTIFFS AND QUALIFIED CLAIMANTS

In exchange for the considerations recited in this Stipulation, the Current Opt-In Plaintiffs and Qualified Claimants hereby and forever release, acquit, discharge and covenant not to sue Defendant, including as defined above in the "Definitions" section, any of its parent

organizations, predecessors, successors, divisions, partners, subsidiaries, owners, assigns, shareholders, insurers, and affiliates, and any of its/their current or former officers, directors, employees, trustees, agents, owners, shareholders, assigns, insurers, and attorneys, for and from any and all claims, whether known or unknown, for violation of the Fair Labor Standards Act that arose prior to and including March 10, 2010.

## VIII.   CONFIDENTIALITY OF CLASS DATA

Plaintiffs' Counsel agrees that all class data and information provided by APAC will: (i) be kept confidential; (ii) be used for no purpose other than in the claims administration process; and (iii) be returned to APAC at the conclusion of the claims administration process or destroyed with certification of destruction.

## IX.   NOTICES

All notices, requests, demands, and other communications required or permitted to be given pursuant to this Stipulation shall be in writing and shall be delivered personally or mailed, postage prepaid, by first-class mail to the undersigned persons at their respective addresses as set forth herein:

Counsel for Plaintiffs:      George A. Hanson
                             Ashlea G. Schwarz
                             Stueve Siegel Hanson LLP
                             460 Nichols Road, Suite 200
                             Kansas City, Missouri 64112
                             Telephone:  816-714-7100
                             Facsimile:  816-714-7101
                             Email:  hanson@stuevesiegel.com
                             Email:  ashlea@stuevesiegel.com

Bradford B. Lear
Todd C. Werts
Lear Werts LLP
2003 West Broadway, Suite 107
Columbia, Missouri 65203
Telephone: 573-875-1991
Facsimile: 573-875-1985
Email: lear@learwerts.com
Email: werts@learwerts.com

Counsel for Defendant:   Andrew Voss
Littler Mendelson, P.C.
80 South 8th Street
Minneapolis, Minnesota 55402-2136
Telephone: (612) 630-1000
Fax: (612) 630-9626
Email: avoss@littler.com

## XI.   REPRESENTATION BY COUNSEL

The parties acknowledge and agree that they have been represented by counsel throughout all negotiations which preceded the execution of this Stipulation, and that this Stipulation has been executed with the consent and advice of counsel.

## XII.   NO ADMISSION OF LIABILITY

The parties acknowledge and agree that liability for the actions which are the subject matter of this Stipulation is disputed by Defendant. This Stipulation memorializes the parties' compromise of the Lawsuit, and shall not be construed as an admission of liability at any time or for any purpose, under any circumstances. The parties further acknowledge and agree that this Stipulation shall not be used to suggest an admission of liability in any dispute the parties may have now or in the future with respect to any person or entity. Neither this Stipulation nor anything herein, nor any part of the negotiations had in connection herewith, shall constitute evidence with respect to any issue or dispute.

## XIII.   MODIFICATION OF STIPULATION

No waiver, modification, or amendment of the terms of this Stipulation, whether purportedly made before or after the Court's approval of this Stipulation, shall be valid or binding unless in writing, signed by or on behalf of all parties and then only to the extent set forth in such written waiver, modification, or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Stipulation shall not be deemed a waiver of any of the other provisions of this Stipulation, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Stipulation.

## XIV.   FURTHER COOPERATION

Plaintiffs' Counsel and Defendant's Counsel shall proceed diligently to prepare and execute all documents, to seek the necessary Court approvals, and to do all things reasonably necessary or convenient to consummate this Stipulation and its provisions as expeditiously as possible. The parties and their respective attorneys further agree to use their best efforts to carry out the terms of this Stipulation.

## XV.   CONSTRUCTION AND INTERPRETATION

This Stipulation constitutes the entire agreement between the parties. Except as expressly provided herein, this Stipulation has not been executed in reliance upon any other oral or written representations or terms, and no such extrinsic oral or written representations or terms shall modify, vary, or contradict its terms. In entering into this Stipulation, the parties agree that this Stipulation is to be construed according to its terms and may not be varied or contradicted by extrinsic evidence. This Stipulation shall be subject to, governed by, construed, enforced and administered in accordance with the laws of the State of Wisconsin, both in its procedural and substantive aspects, and without regard for the principle of conflict of laws, and shall be subject

18

to the continuing jurisdiction of the United States District Court for the Western District of Wisconsin. Any dispute, challenge, question, or the like relating to this Stipulation shall be heard only by the United States District Court for the Western District of Wisconsin. This Stipulation shall be construed as a whole according to its fair meaning and intent, and not strictly for or against any party, regardless of who drafted or who was principally responsible for drafting this Stipulation or any specific term or condition thereof. The Named Plaintiff and APAC participated in the negotiation and drafting of this Stipulation and had available to them the advice and assistance of independent counsel. As such, neither the Named Plaintiff nor APAC may claim that any ambiguity in this Stipulation should be construed against the other.

## XVI.  EXTENSION OF TIME

The parties may agree upon a reasonable extension of time for deadlines and dates reflected in this Stipulation, without further notice, subject to Court approval where applicable.

## XVII.  COUNTERPARTS

This Stipulation, any amendments or modifications to it, and any other documents required or contemplated to be executed in order to consummate this Stipulation, may be executed in one or more counterparts, each of which shall be deemed an original of this Stipulation. All counterparts of any such document together shall constitute one and the same instrument.

## XVIII.  BINDING EFFECT

This Stipulation is binding upon and shall inure to the benefit of the parties to this Stipulation, the Current Opt-In Plaintiffs, and Qualified Claimants, and past, present and future divisions, predecessors, successors, shareholders, officers, directors, employees, agents, trustee, representatives, administrators, fiduciaries, assigns, subrogees, executors, partners, parents,

subsidiaries, and privies. Without limiting the foregoing, this Stipulation specifically shall be binding upon the spouses, children, heirs, assigns, successors and offspring of the Named Plaintiff, Current Opt-In Plaintiffs, and Qualified Claimants.

## XIX.   CONTINUING JURISDICTION

The United States District Court for the Western District of Wisconsin shall have continuing jurisdiction to construe, interpret, and enforce the provisions of this Stipulation, to supervise the administration and distribution of the Total Claims Fund, and to hear and adjudicate any dispute or litigation arising from this Stipulation or the issues of law and facts asserted in the Lawsuit until a final order of dismissal is signed by the Court.

IN WITNESS WHEREOF, the undersigned have duly executed this Stipulation as of the date indicated below:

**THE NAMED PLAINTIFF, ON BEHALF OF HERSELF AND CURRENT OPT-IN PLAINTIFFS AND POTENTIAL OPT-IN PLAINTIFFS:**

DATED: __6/7/10__                 By _____
                                      Named Plaintiff. Tiffany Sharpe

**DEFENDANT APAC CUSTOMER SERVICES, INC.:**

DATED: _____       By _____
                                        Name: _____
                                        Authorized Representative of APAC
                                        Customer Services, Inc.

subsidiaries, and privies. Without limiting the foregoing, this Stipulation specifically shall be binding upon the spouses, children, heirs, assigns, successors and offspring of the Named Plaintiff, Current Opt-In Plaintiffs, and Qualified Claimants.

## XIX. CONTINUING JURISDICTION

The United States District Court for the Western District of Wisconsin shall have continuing jurisdiction to construe, interpret, and enforce the provisions of this Stipulation, to supervise the administration and distribution of the Total Claims Fund, and to hear and adjudicate any dispute or litigation arising from this Stipulation or the issues of law and facts asserted in the Lawsuit until a final order of dismissal is signed by the Court.

IN WITNESS WHEREOF, the undersigned have duly executed this Stipulation as of the date indicated below:

**THE NAMED PLAINTIFF, ON BEHALF OF HERSELF AND CURRENT OPT-IN PLAINTIFFS AND POTENTIAL OPT-IN PLAINTIFFS:**

DATED: _____   By _____

                                        Named Plaintiff: Tiffany Sharpe

**DEFENDANT APAC CUSTOMER SERVICES, INC.:**

DATED: _June 7, 2010_   By _____

                            Name: _____
                            Authorized Representative of APAC
                            Customer Services, Inc.

                            Andrew B. Szafran
                            Senior Vice President & CFO

20

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

**If you are or were a customer service representative employed by APAC Customer Services, Inc. between March 11, 2008 and March 10, 2010, please read this notice as it may affect your rights.**

*A federal court authorized this notice.  This is not a solicitation from a lawyer.*

## NOTICE

**TO:**   **<<First_Name>><<Last_Name>>**

**RE:**   **Resolution of Claims for Alleged Unpaid Compensation**

- **Customer Service Representatives (CSRs)** have sued APAC Customer Services, Inc. (APAC) claiming that APAC failed to pay all required pay.

- You have been identified as a person potentially eligible to join this lawsuit and participate in the claims process if you choose.

- You are eligible to join this lawsuit and participate in the claims process if you believe you were not fully paid for all of the overtime you worked while employed as a CSR for APAC between March 11, 2008 and March 10, 2010.

| YOUR LEGAL RIGHTS AND OPTIONS | |
|---|---|
| **ASK TO BE INCLUDED** | If you choose to participate in this claims process and return a valid Claims Administration Form that is approved, you will receive a share of the claim fund based on the number of weeks you work for APAC as a CSR during the class period.  If you participate in the claims process, you give up any rights to separately sue APAC about the same legal claims in this lawsuit.  <u>If you wish to be included, you must complete the Claims Administration Form included with this Notice.</u> |
| **DO NOTHING** | By doing nothing, you give up the right to a share of the claim fund and will receive no money from this claims process.  You keep any rights to sue APAC separately about the same legal claims in this lawsuit, but the statute of limitations continues to run. |

**PLEASE READ THIS NOTICE CAREFULLY**
**IT MAY AFFECT YOUR LEGAL RIGHTS**

## I. INTRODUCTION

This Notice is to inform you that APAC Customer Services, Inc. ("APAC") has agreed to resolve a collective action lawsuit filed by Plaintiff Tiffany Sharpe ("Named Plaintiff"), individually, and on behalf of a class of others similarly situated, claiming that APAC violated the Fair Labor Standards Act ("FLSA") and other state wage-and-hour statutes by failing to pay for all time worked by CSRs employed at APAC between March 11, 2008 and March 10, 2010 (the "Class Period"). This Notice is to inform you about the status of the lawsuit, including your right to participate in the claim process.

## II. DESCRIPTION OF THE LAWSUIT

On May 26, 2009, the Named Plaintiff filed a complaint in the United States District Court for the Western District of Wisconsin on behalf of herself and all similarly situated CSRs employed at APAC alleging violations of the FLSA and state wage-and-hour laws and seeking back pay for non-payment of overtime wages, interest, liquidated damages and attorneys' fees (the "Lawsuit"). After engaging in discovery, the parties agreed to, and the Court ordered, a stay to allow the parties to pursue mediation. The parties reached an agreement with respect to a claim process to resolve the Lawsuit on June 7, 2010.

APAC denied and continues to deny the allegations in Plaintiffs' Complaint and contends that its policies and practices regarding compensation CSRs were proper and in compliance with the law at all times. APAC wishes to resolve the Lawsuit through the claim process, however, to avoid costly, disruptive, and time-consuming litigation and does not admit to any wrong-doing or liability.

The Named Plaintiff has consulted with her counsel and recognizes the risks inherent in this litigation, including the risk that APAC may prevail in its position that it has not violated the FLSA. As such, the Named Plaintiff has negotiated the terms of the claim process that provides for direct monetary payments to the potential plaintiffs in this action. On _____, the Court approved the agreement between the parties which describes the claim process and certified this case as a collective action under Section 16(b) of the FLSA for purposes of resolving the case. This Notice is being sent to you because APAC's records indicate that you were employed as a CSR between March 11, 2008 and March 10, 2010, and have not yet opted-in to this case.

## III. TERMS OF THE PARTIES' AGREEMENT

APAC has agreed to pay $4,000,000.00 into a Claim Fund to resolve all claims raised in the Lawsuit. This fund will be used (1) to pay the Named Plaintiff, including a Service Award of $5,000.00 in addition to her *pro rata* share of the Claim Fund; the plaintiffs who have already opted into this lawsuit ("Current Opt-In Plaintiffs"), including a Service Award of $1,000.00 each in addition to their pro-rata shares of the Claim Fund for those who participated in discovery and attended a deposition; and individuals who file timely and approved Claims Administration Forms pursuant to this Notice ("Qualified Claimants"), (2) to pay the administrative costs and expenses, and (3) to pay Plaintiffs' attorneys fees and costs in the Lawsuit.

The portion of the Claim Fund designated to pay the Qualified Claimants is called the Net Claims Fund. According to APAC's records, you worked **[insert total number of weeks]** total weeks as a CSR between March 11, 2007 and March 10, 2010. If you timely file a valid Claims Administration Form that is approved, APAC has agreed to a pay you a *pro rata* share of the Net Claims Fund in an amount between **<< amount>>** and **<< amount>>,** less applicable withholdings, which is based on the number of complete weeks you worked as a CSR between March 11, 2007 and March 10, 2010, and your answers to the questions on the enclosed Claims Administration Form.

**If you wish to participate in the claims process, you must mail the enclosed Claims Administration Form postmarked on or before [insert 60 days from date notice is initially sent out.]** No late Claims Administration Forms will be considered. If you do not wish to participate in the claims process you do not need to do anything and you will automatically be excluded from the claims process and the claims agreement.

This general summary of the claims agreement does not include all of the terms and conditions of the proposed agreement between the parties. The only complete statement of the terms of the claims agreement is found in the parties' Stipulation for Resolution and Release of Claims ("Stipulation"), which was approved by the Court on **[insert date of court approval]**. Copies of the Stipulation are available from the Plaintiffs' Counsel. **Please do not call or contact the Judge or personnel in the Judge's chambers.**

## IV. OPPORTUNITY TO FILE A CLAIMS ADMINISTRATION FORM

**To participate in the claims process, you must complete and return the enclosed Claims Administration Form postmarked on or before [insert 60 days from date notice is initially sent out]** to: APAC Claims Administrator, _____. If your Claims Administration Form is not postmarked on or before **[insert 60 days from date notice is initially sent out]**, you will not be able to participate in the claims process.

The Claims Administration Form has three questions which must be answered under oath. If you truthfully answer these three questions, timely return the form, and your form is approved, then you will be entitled to a payment under the claims process and your FLSA claims

against APAC will be released.  If you do not timely return the Claims Administration Form or your Claims Administration Form is not approved, based upon your answers to the questions, then you are not entitled to payment from the Net Claims Fund but you will not have released any claims against APAC that you may have.

## V. BINDING EFFECT AND RELEASE OF CLAIMS

In exchange for the payment described above, and by timely returning a valid Claims Administration Form, you will hereby and forever release, acquit, discharge and covenant not to sue APAC, which includes its affiliates, parent companies, present and future divisions, successors, shareholders, officers, directors, employees, former employees, agents, trustees, representatives, administrators, fiduciaries, assigns, subrogees, executors, partners, parents, d/b/a's, predecessors, subsidiaries, and any and all other related entities (collectively referred to as the "Released Parties"), for and from the "Released Claims" defined as any claims for violation of the Fair Labor Standards Act for work you performed at anytime in any location in the United States in any position with the Released Parties through March 10, 2010.

If you do not timely return your Claims Administration Form, you will not be bound by this agreement, and you will not receive a share of the Net Claims Fund.

After all timely submitted Claims Administration Forms are received, the Claims Administrator will mail checks to the Named Plaintiff, Current Opt-In Plaintiffs, and Qualified Claimants.  One-half of this payment is considered wages and shall be subject to the withholding of all applicable local, state, and federal taxes, and shall appear on a Form W-2.  The remaining one-half payment is considered liquidated damages and interest.  You will be responsible for paying the appropriate taxes on this amount, and will appear on a Form 1099.  If you timely file a Claims Administration Form, the parties' Stipulation will be binding on you whether or not you cash your claims check.  The parties anticipate that the checks will be distributed by **[insert date]**.

## VI. ATTORNEY FEES AND COSTS AND CLAIM ADMINISTRATION COSTS

The Court has approved attorneys fees and costs, including the cost of claim administration, to be paid to Plaintiffs' counsel in the total amount of $1,320,000.00, which represents 33% of the Claim Fund.  Because Plaintiffs' counsel are being paid from the Claim Fund, your individual payment referenced above is free and clear of any obligation to pay attorneys' fees.

The Plaintiffs' Counsel are:

George A. Hanson                    Bradford B. Lear
Ashlea G. Schwarz                   Todd C. Werts
Stueve Siegel Hanson LLP            Lear Werts LLP
460 Nichols Road, Suite 200         2003 W. Broadway, Suite 107
Kansas City, Missouri 64112         Columbia, Missouri 65201

Telephone:  816-714-7100          Telephone:  573-875-1991
Fax:  816-714-7101                Fax:  573-875-1985
Email:  hanson@stuevesiegel.com   Email:  lear@learwerts.com
Email:  ashlea@stuevesiegel.com   Email:  werts@learwerts.com

## VII.  FURTHER INFORMATION

If you have any questions about the claim process, you may contact the Claims Administrator toll-free at [**insert**] or the Plaintiffs' Counsel at the addresses and phone numbers listed above.

## VIII.  NO RETALIATION OR DISCRIMINATION

APAC has voluntarily agreed to the terms of the Stipulation.  Both current and former APAC employees are eligible to participate in the claims process if they were employed as CSRs during the Class Period.  APAC is committed to the terms of the claims process.  APAC will not retaliate or take any adverse action against you for participating in the claims process.  Federal law prohibits any such retaliation.

## IX.  NO OPINION EXPRESSED AS TO THE MERITS OF THE CASE

On [insert date], the Court approved the parties' Stipulation and found that the Stipulation was fair and reasonable.  However, the Court has expressed no opinion regarding the merits of the Plaintiffs' claims or APAC's liability.  **Please do not write or call the Judge or personnel in the Judge's Chambers regarding the claims process or the parties' Stipulation.**

Dated: _____          _____
                                         Clerk
                                         U.S. District Court for the
                                         Western District of Wisconsin

# EXHIBIT 2

### CLAIMS ADMINISTRATION FORM
***Sharpe v. APAC Customer Services, Inc.***
**Case No. 09 CV 329 (U.S. Dist., W.D. Wisconsin)**

IN ORDER TO PARTICIPATE IN THE CLAIMS PROCESS YOU **MUST** COMPLETE THIS DOCUMENT.  THE FORM MUST BE COMPLETED, SIGNED AND RETURNED TO THE CLAIMS ADMINISTRATOR IN THE ENCLOSED BUSINESS REPLY ENVELOPE AT <INSERT ADDRESS> AND MUST BE **POSTMARKED NO LATER THAN <INSERT DATE BASED ON 60 DAYS FROM DATE OF INITIAL MAILING>.**

**I.       Opt-In Plaintiff Information**

This is the most current information that we have for you.  Please make any necessary changes where indicated.

Changes, if any:

<Name>                                    _____

<Street Address>                      _____

<City, State, Zip>                     _____

**II.      Questions (mark the box next to the appropriate answer)**

1.  Did you work as a Customer Service Representative (CSR) for APAC Customer Services, Inc. at any time between March 11, 2008 and March 10, 2010?

    ☐ YES                    ☐ NO

2.  If you answered yes to Question 1: Did you spend time working for APAC Customer Services, Inc. in excess of forty (40) hours in a week without being fully paid?

    ☐ YES                    ☐ NO

3.  If you answered yes to Question 2: On a typical work day at APAC, how much time do you estimate you spent performing work-related tasks for which you were not paid (including time spent at the beginning of the day, end of the day, and over a meal break)?

    ☐ Less than 5 minutes        ☐ 5 – 10 minutes        ☐ More than 10 minutes

*Sharpe v. APAC Customer Services, Inc.*
**Case No. 09 CV 329 (U.S. Dist., W.D. Wisconsin)**

**III.     Verification and Consent to Join**

By signing below, I <Name> hereby verify under penalty of perjury pursuant to 28 U.S.C. § 1746 that the above information is true and correct to the best of my knowledge and understanding.  I further understand that by signing below, I am consenting to join the above-referenced lawsuit, participate in the claims administration process, and I am releasing the wage and hour claims described in the Notice that was enclosed with this Claims Administration Form.

Signature:     _____ (required)

Print Name:    _____

Date:          _____, 2010

THIS FORM MUST BE COMPLETED, SIGNED AND RETURNED TO THE CLAIMS
ADMINISTRATOR AT **<INSERT ADDRESS>** AND MUST BE POSTMARKED NO LATER THAN
**<INSERT DATE BASED ON 60 DAYS FROM DATE OF INITIAL MAILING>**.

WE ADVISE YOU TO KEEP A COPY FOR YOUR RECORDS.